**Felix WILLIAMS, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15933.**

United States Court of Appeals
Eighth Circuit.

Oct. 21, 1958.

Raymond J. Kempe, St. Paul, Minn. (Mogren & Kempe, St. Paul, Minn., on the brief), for appellant.

Clifford Janes, Asst. U. S. Atty., St. Paul, Minn., for appellee.

Before SANBORN, WOODROUGH and VOGEL, Circuit Judges.

VOGEL, Circuit Judge.

Felix Williams was indicted and convicted by a jury on all 12 counts of an indictment dealing with the alleged illegal handling of marihuana and heroin. Counts 1, 3, 5 and 7 charged the appellant with having transferred marihuana not in pursuance of a written order form and in violation of 26 U.S.C.A. § 4742. Upon a verdict of guilty as to these four counts, he received a general sentence of 35 years. Counts 2, 4, 6, 8 and 10 charged the appellant with having obtained and acquired marihuana without having paid the tax imposed by 26 U.S.C.A. § 4741, in violation of 26 U.S.C.A. § 4744. Count 12 charged the appellant with having purchased heroin in violation of 26 U.S.C.A. § 4704(a). Upon a verdict of guilty as to Counts 2, 4, 6, 8, 10 and 12, the appellant received a general sentence of 20 years. Count 9 charged concealment and transportation of marihuana, in violation of 21 U.S.C.A. § 176 and Count 11 charged concealment and transportation of heroin, in violation of 21 U.S.C.A. § 174. Upon a guilty verdict as

to these two counts, the appellant received a general sentence of 35 years. The trial court directed that the three general sentences be served concurrently and not consecutively, amounting to an over-all general sentence of 35 years.

On appeal to this court, the appellant sets forth five claimed errors. The first three have to do with evidence obtained in a search and seizure claimed to be unlawful and will be considered together. Point No. 4 is, "The court erred in receiving Exhibit 26 and the testimony of Robert Lorenz as to non-possession of an official order form covering transfer of marijuana." Point No. 5 was, "The court erred in failing to grant appellant's motion for verdict of acquittal notwithstanding the verdict or for a new trial."

A recitation of the evidence with reference to the alleged violations and the arrest, search and seizure is a prerequisite to an understanding of the issues. Felix Williams, the appellant, had a history of narcotic violation. He was suspected of continued trafficking in narcotics and had been under surveillance by the Minneapolis Police Department and Federal Narcotics Agents since his release from prison. The testimony regarding the alleged violations herein falls roughly into five transactions involving the various 12 counts. As to Counts 1 and 2, the testimony indicates that Betty Ann Fleming and Jacqueline Crump, two teen-age high school girls, went to the appellant's room where they received three marihuana cigarettes, the appellant being present at the time. They consumed the cigarettes in the appellant's room in his presence. No other persons were there at the time. The transaction occurred on a Sunday in January or February, 1957.

The next transaction involves Counts 3 and 4. Jacqueline Crump went to the appellant's room alone toward the last of February, 1957. There she bought from the appellant $5.00 worth of marihuana in bulk, enough to make about ten cigarettes. She paid the appellant $5.00 for the marihuana. She smoked some of it and got sick and dizzy.

Counts 5 and 6 involve the so-called Jacqueline Glenn transaction which occurred in February or early March, 1957. The appellant met Jacqueline Glenn in Dugan's Bar on 3rd and Washington Avenue South, Minneapolis, and asked her if she wanted "to be turned on". An affirmative response and $2.00 resulted in the appellant handing her "two sticks", being two marihuana cigarettes. The witness, Mrs. Glenn, had smoked marihuana on other occasions and knew marihuana when she smoked it. Mrs. Glenn got another "stick" from appellant sometime after this transaction.

Counts 7 and 8 involve the Jacqueline Crump-Michael Stinski-Jules LaBrie transaction. On March 30, 1957, Jacqueline Crump, then aged 15, Jules LaBrie, aged 17, and Michael Stinski, aged 17, were together. The boys gave Jacqueline $3.00 and she had $2.00 of her own. She took this money to the appellant's room, where she told him she wanted $5.00 worth of marihuana. No one else was present. He gave her the marihuana in some Kleenex. After Jacqueline had rolled three cigarettes there, she took the marihuana back to the boys in the car and they rode around and smoked, also drinking brandy. Michael Stinski became ill that night, and had to be taken to a hospital. The testimony of the three witnesses plus the testimony of the doctor who cared for Michael Stinski fully justified the conclusion that the substance sold to Jacqueline Crump was marihuana.

The transaction of April 3, 1957, is the basis for Counts 9, 10, 11 and 12, and involves the alleged improper search and seizure. The Minneapolis police had picked up and were holding in custody for investigation Jules LaBrie and Jacqueline Crump. On the morning of April 3, 1957, they obtained information from them with reference to the March 30, 1957, marihuana purchase from the appellant. Officer Sullivan, head of the Vice Squad, believed that he then had sufficient information to make an immediate arrest of the appellant for selling marihuana cigarettes to juveniles. The

immediacy of this arrest was impelled by the fact that Betty Ann Fleming had visited the two juveniles in jail that morning. This visit caused Sullivan to fear that she would warn the appellant and cause him to flee before he could obtain a search warrant and make the arrest on the state offense. He called Robert Lorenz, Federal Narcotics Agent, and after advising him of the situation invited him to accompany the police. Sullivan, other police officers and Agent Lorenz then proceeded to the appellant's place of residence where the appellant was arrested by Sullivan. The arrest was made without warrant and pursuant to 41 Minn.Stat.Ann. 238, which provides:

"629.34.

"A peace officer may, without warrant arrest a person:

"(1) For a public offense committed or attempted in his presence;

"(2) When the person arrested has committed a felony, although not in his presence;

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; or

"(4) Upon a charge made upon reasonable cause of the commission of a felony by the person arrested.

"To make such arrest the officer may break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he shall be refused admittance."

Williams was arrested in the hallway outside his room. Sullivan stated to Williams that he would like to look around. Williams replied, "Go ahead. You won't find anything." The search disclosed marihuana in the appellant's room and both marihuana and heroin under the carpeting of a stairway outside the appellant's room and leading up to a kitchen and a bathroom to which the appellant had access and which he used. In a pre-trial motion, the appellant sought to suppress the evidence so seized. The motion was denied. Upon this denial and the subsequent admission into evidence of the seized material error is predicated.

The appellant contends, "Where evidence is obtained by search and seizure without a search warrant and both Federal and State authorities participate in or have a hand in the search, such evidence is inadmissible." Such a statement presupposes an *unlawful* arrest or a lawful arrest and an unreasonable search in connection therewith. It has been demonstrated that the arrest here was lawful and apparently that is unchallenged. Accordingly, our question is whether the search without a warrant, in connection with the lawful arrest, was a reasonable one. Parenthetically, it should be noted that while the facts show that Federal Agent Lorenz, who accompanied the police officers, did not make an arrest although federal violations were involved, that under 26 U.S.C.A. § 7607 he, too, as an agent of the Bureau of Narcotics of the Treasury Department, was empowered to make arrests without warrant where he had reasonable grounds for believing that the person to be arrested had committed such a violation.

It is urged here that there was sufficient time to obtain a search warrant and that failure to do so violated appellant's constitutional rights. It was on April 3, 1957, that the police received information from the juveniles in custody that led them to believe that they had cause for an arrest on a charge of selling marihuana cigarettes to juveniles. It may be argued that the police thereupon had sufficient time to apply for and obtain a warrant for the search of appellant's premises, but we think it not unreasonable to conclude, as apparently the trial court did, that the visit received by the juveniles in custody might, and very probably would, result in the appellant's being informed of the activities of the police, his disposing of the hidden marihuana and heroin on his premises, and his departure

As was pointed out by the Supreme Court in United States v. Rabinowitz, 1950, 339 U.S. 56, 65–66, 70 S.Ct. 430, 435, 94 L.Ed. 653:

"Whether there was time may well be dependent upon considerations other than the ticking off of minutes or hours. The judgment of the officers as to when to close the trap on a criminal committing a crime in their presence or who they have reasonable cause to believe is committing a felony is not determined solely upon whether there was time to procure a search warrant. Some flexibility will be accorded law officers engaged in daily battle with criminals for whose restraint criminal laws are essential.

"It is appropriate to note that the Constitution does not say that the right of the people to be secure in their persons should not be violated without a search warrant if it is practicable for the officers to procure one. The mandate of the Fourth Amendment is that the people shall be secure against *unreasonable* searches. *It is not disputed that there may be reasonable searches, incident to an arrest, without a search warrant.* Upon acceptance of this established rule that some authority to search follows from lawfully taking the person into custody, it becomes apparent that *such searches turn upon the reasonableness under all the circumstances and not upon the practicability of procuring a search warrant, for the warrant is not required.* To the extent that Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663, requires a search warrant solely upon the basis of the practicability of procuring it rather than upon the reasonableness of the search after a lawful arrest, that case is overruled. The relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. That criterion in turn depends upon the facts and circumstances—the total atmosphere of the case. It is a sufficient precaution that law officers must justify their conduct before courts which have always been, and must be, jealous of the individual's right of privacy within the broad sweep of the Fourth Amendment." (Emphasis supplied.)

There is cited to us the very recent Supreme Court case of Miller v. United States, 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332. That case turns solely on the proposition that, 357 U.S. at page 313, 78 S.Ct. at page 1198:

"The petitioner could not be lawfully arrested in his home by officers breaking in without first giving him notice of their authority and purpose. Because the petitioner did not receive that notice before the officers broke the door to invade his home, the arrest was unlawful, and the evidence seized should have been suppressed."

We have no such situation here. There was no breaking in and no misunderstanding as to authority or purpose. Williams was *lawfully* arrested outside his room in the hall he used to go to the kitchen and bathroom. The only question is whether the search that followed was a reasonable one. We think it was and that the circumstances come well within the rule announced by the Supreme Court in Harris v. United States, 1947, 331 U.S. 145, 150–151, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399:

"This Court has also pointed out that it is only unreasonable searches and seizures which come within the constitutional interdict. The test of reasonableness cannot be stated in rigid and absolute terms. 'Each case is to be decided on its own facts and circumstances.' Go-Bart Importing Company v. United States, 1931, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374.

"The Fourth Amendment has never been held to require that every valid search and seizure be effected

under the authority of a search warrant. Search and seizure incident to lawful arrest is a practice of ancient origin and has long been an integral part of the law-enforcement procedures of the United States and of the individual states.

"The opinions of this Court have clearly recognized that the search incident to arrest may, under appropriate circumstances, extend beyond the person of the one arrested to include the premises under his immediate control. Thus in Agnello v. United States, supra, 269 U.S. [20], at page 30, 46 S.Ct. [4] at page 5, 70 L.Ed. 145, it was said: 'The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons, and other things to effect an escape from custody is not to be doubted.' *It is equally clear that a search incident to arrest, which is otherwise reasonable, is not automatically rendered invalid by the fact that a dwelling place, as contrasted to a business premises, is subjected to search.*" (Emphasis supplied.)

■ It was contended here that the search which disclosed the heroin and marihuana secreted under the stair carpet immediately outside the door of the appellant's room and leading to the kitchen and bathroom which he used was highly improper. As was said by the Supreme Court in the Harris case, supra, 331 U.S. at page 152, 67 S.Ct. at page 1102:

"Nor can support be found for the suggestion that the search could not validly extend beyond the room in which petitioner was arrested."

Here we think it entirely within reason that the arresting officers search the hall and stairway leading from the appellant's room where he slept to the bathroom and kitchen upstairs which he used. We think it wholly reasonable that in making their lawful arrest they search the room in which, according to their information, the appellant had made sales of marihuana and marihuana cigarettes. See Kernick v. United States, 8 Cir., 1957, 242 F.2d 818, 820.

In a reply brief, the appellant makes point of the fact that there is dispute in the testimony as to when the police actually received knowledge of the March 30th sale of marihuana, claiming that the police had the information prior to April 3rd, as testified to by Officer Sullivan. While there may be some dispute in the testimony, we think it not too material in view of the Supreme Court's statement in United States v. Rabinowitz, supra, 339 U.S. at page 66, 70 S.Ct. at page 435, but point out, nevertheless, that substantial evidence supports the conclusion that neither the police nor the federal agent had the knowledge prior to April 3rd. We hold the search to be entirely reasonable and proper and not violative of appellant's constitutional rights.

■ Appellant's fourth point has to do with the receipt of Exhibit 26. Narcotics Agent Lorenz was allowed to testify that in a conversation with the appellant in jail on April 9th that the appellant admitted to him that he was not registered and never had been registered to deal in marihuana and that he did not have any marihuana order form. Exhibit 26 was a notice and demand to produce an official order form covering transfer of marihuana. The testimony was received without objection but Government's Exhibit 26 was objected to as irrelevant and immaterial. There was no error in the receipt of Exhibit 26. The court's ruling on the objection as to relevancy and materiality is clearly sanctioned in Gondron v. United States, 5 Cir., 1958, 256 F.2d 205, 207, where the court said:

"It is not necessary to a conviction therefore to allege or prove that a demand for an order form was made. Where, however, demand for and re-

fusal to furnish is shown, this puts upon the defendant the burden of going forward. It is sufficient, therefore, to allege unlawful possession without an order form and to prove this fact by proving either a demand and a refusal without explanation to furnish the form, thus putting the burden of going forward on the defendant. * * *"

The appellant here did not testify nor was there any evidence entered on his behalf to meet this burden of going forward. See also United States v. Stallsworth, 7 Cir., 1951, 193 F.2d 870. And as further said in the Gondron case, 256 F.2d at page 207:

"In addition, we think the evidence is ample, without the demand and failure to furnish such form, to show guilty possession."

Appellant's fifth point is that the trial court erred in failing to grant a motion for acquittal notwithstanding the verdict or for a new trial, basing the same on the heretofore discussed alleged errors. We accordingly overrule the appellant as to the fifth point.

■ There is an additional reason why the judgment appealed from should be affirmed. It will be noted that on Counts 1, 3, 5 and 7 the court gave the defendant a general sentence of 35 years, which was less than the statutory maximum, this being a second offense. Subsequent sentences on other counts of 20 years and 35 years were to run concurrently with the sentence given under Counts 1, 3, 5 and 7. Counts 1, 3, 5 and 7 had nothing whatsoever to do with the evidence obtained by search of the appellant's premises at the time of arrest. The evidence as to Counts 1, 3, 5 and 7 stands on its own feet and has to do with the sale of marihuana cigarettes and marihuana in bulk to the witnesses who testified thereto. Inasmuch as there can be no doubt of the sufficiency of Counts 1, 3, 5 and 7 and conviction therein in nowise rests upon the evidence obtained in the search, the judgment of conviction should be affirmed. Claassen v. United States, 1891, 142 U.S. 140, 146, 12 S.Ct. 169, 170, 35 L.Ed. 966:

"In criminal cases, the general rule, as stated by Lord Mansfield before the Declaration of Independence, is 'that, if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad.' Peake v. Oldham, Cowp. 275, 276; Rex v. Benfield, 2 Bur. 980, 985. See, also, Grant v. Astle, 2 Doug. 722, 730. And it is settled law in this court, and in this country generally, that in any criminal case a general verdict and judgment on an indictment or information containing several counts cannot be reversed on error if any one of the counts is good, and warrants the judgment, because, in the absence of anything in the record to show the contrary, the presumption of law is that the court awarded sentence on the good count only. Locke v. United States, 7 Cranch. 339, 344, 3 L.Ed. 364; Clifton v. United States, 4 How. 242, 250, 11 L.Ed. 957; Snyder v. United States, 112 U.S. 216, 5 S.Ct. 118, [28 L.Ed. 697]; Bond v. Dustin, 112 U.S. 604, 609, 5 S.Ct. 296, [28 L.Ed. 835]; 1 Bishop Crim.Pro. § 1015; Wharton Crim.Pl. & Pr. § 771."

See also Sinclair v. United States, 1929, 279 U.S. 263, 299, 49 S.Ct. 268, 274, 73 L.Ed. 692:

"7. The conviction on the first count must be affirmed. * * * As the sentence does not exceed the maximum authorized as punishment for the offense charged in the first count, we need not consider any other count. Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173";

Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Pinkerton v. United States, 1946, 328 U.S. 640, 641–642, note 1, 66 S.Ct. 1180, 90 L.Ed. 1489; United States v. Sheridan, 1946, 329 U.S. 379, 381, 67 S.Ct. 332, 333, 91 L.Ed. 359:

"Sheridan was sentenced to five years' imprisonment on each count, the sentences to run concurrently. Hence, if the conviction on any is valid, it is unnecessary to consider the convictions on the other two. * * *. Accordingly, for the purposes of this decision it may be taken that only the convictions on counts one and two are in issue.";

and Lawn v. United States, 1958, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321.

Affirmed.