Loren R. GAJEWSKI and Mervin A. Gajewski, Appellants,

v.

UNITED STATES of America, Appellee.

No. 17079.

United States Court of Appeals Eighth Circuit.

July 26, 1963.

Rehearing Denied Aug. 26, 1963.

Francis Breidenbach, Bismarck, N. D., and John Fred Schlafly, Alton, Ill., for appellants; W. A. Jacobsen, of Watford City, N. D., on the brief.

John O. Garaas, U. S. Atty., Fargo, N. D., for appellee.

Before JOHNSEN, Chief Judge, MATTHES, Circuit Judge, and GIBSON, District Judge.

MATTHES, Circuit Judge.

Loren R. Gajewski and Mervin A. Gajewski, appellants, are brothers (42 and 36 years old, respectively,) and are the children of Otto A. Gajewski, who died in 1959, and Lillia B. Gajewski, who died in 1961. At all times pertinent to this proceeding appellants were engaged principally in farming in McKenzie County, North Dakota.

In three counts of an indictment filed October 24, 1960, appellants were charged with committing conspiracies in violation of 18 U.S.C.A. § 371.[1] In the fourth count of the indictment Loren R. Gajewski was charged with a substantive offense.

In summary, Count One alleged that on or about June 22, 1954, prior thereto and continuing thereafter, appellants unlawfully conspired and confederated together and with Otto A. Gajewski, to defraud the United States by impeding, obstructing and attempting to defeat the operation of the Agricultural Adjustment Act of 1938, as amended, (7 U.S.C.A. § 1281 et seq.) and to commit certain offenses against the United States in violation of said Act and the rules and regulations promulgated thereunder, and in violation of 18 U.S.C.A. § 1001.[2] More specifically, the indictment alleged that, pursuant to the conspiracy, a tract of land designated as the "Home Farm," owned in part by Otto A. and Lillia B. Gajewski and in part by Loren R. Gajewski, was registered and operated in accordance with the Act, and that wheat allotments were assigned and wheat marketing cards properly issued for this farm. It was additionally alleged, however, that another tract of land designated as the "South Farm," first partially owned and later fully owned by appellants, was illegally operated by them free of the restrictions imposed by the Act. Explicitly, Count One charged that in furtherance of the conspiracy, and in violation of the Act and its attendant rules and regulations, appellants failed to register the South Farm, failed to procure wheat allotments for it, but nevertheless annually harvested wheat from approximately 200 acres of the South Farm during the years of the conspiracy and marketed such wheat by use of the marketing card issued for the Home Farm.

In Count Two appellants were charged with conspiring to violate the Social Security Act, but inasmuch as appellants were acquitted of this alleged offense, further reference to this count of the indictment is unnecessary.

Count Three alleged a conspiracy under 18 U.S.C.A. § 371, supra, to commit an offense against the United States in violation of 18 U.S.C.A. § 1001, supra. The gravamen of this count is that during March, 1955, prior thereto and continuing through 1959, appellants, in furtherance of their scheme and with Lillia B. and Otto A. as co-conspirators, filed income tax returns in the name of Otto A. Gajewski for the years 1951 through 1958 in which Otto A. falsely and fraudulently claimed Loren R. as a dependent for each of said years and Mervin A. as a dependent for each of the years except 1951. Additionally, it was alleged that during the early part of 1960,

---

1. 18 U.S.C.A. § 371 provides:

"If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more/of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.
* * *"

2. 18 U.S.C.A. § 1001 provides:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, * * * shall be fined not more than $10,000 or imprisoned not more than five years, or both."

appellants, with their co-conspirator, Lillia B., filed an income tax return for 1959 in the name of L. B. Gajewski in which appellants were falsely and fraudulently claimed as her dependents.

As noted, the fourth count was directed solely against Loren R. Gajewski, and charged him with making false, fraudulent and fictitious statements in his 1959 income tax return, in violation of 18 U.S. C.A. § 1001, supra.

Loren and Mervin were found guilty on Counts One and Three, and Loren was found guilty on Count Four. Each was sentenced to imprisonment for a term of two years on Counts One and Three, the terms to be served concurrently, and Loren was sentenced to a term of two years on Count Four, to be served concurrently with the sentence imposed on Counts One and Three.

During the trial, Loren was represented by employed counsel but Mervin, although financially able and fully aware of his right to counsel, understandingly chose to represent himself. It is manifest that Mervin actively participated in every phase of the proceeding.

At the close of the Government's case and again after all of the evidence was in, separate motions for judgment of acquittal were filed and denied. One of the contentions here urged is that there is no substantial evidence in the record to support the verdicts of guilty and that the motions for judgment of acquittal were erroneously denied.

The rather voluminous record consists almost entirely of evidence offered by the Government. Although appellants did not testify and only four witnesses were offered in their behalf, the nature and theory of appellants' defense, directed in the main to the first count, is readily apparent from the numerous pretrial motions filed by them and from Mervin's cross-examination of Government witnesses. In summary, appellants' position was that the Agricultural Adjustment Act is unconstitutional; that it was communistically inspired and that they had the untrammeled right to operate their farm free of Government restrictions and controls.[3]

In examining the record and upon considering the evidence, virtually uncontradicted, we are of the view that there was substantial competent evidence to support the conviction of both appellants under Counts One and Three, and Loren's conviction under Count Four. Even if it were not so, we are required to affirm if the evidence was sufficient to sustain the conviction under any count, since concurrent terms of imprisonment were imposed whereby each appellant received a total sentence of two years, a sentence which did not exceed that which might lawfully have been imposed under any single count. (Fine of $10,-000 and five years' imprisonment or both. 18 U.S.C.A. § 371; 18 U.S.C.A. § 1001). Barenblatt v. United States, 360 U.S. 109, 115, 79 S.Ct. 1081, 3 L.Ed.2d 1115 (1959); Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173 (1919); Burger v. United States, 8 Cir., 262 F.2d 946, 954 (1959), cert. denied, 359 U.S. 990, 79 S.Ct. 1119, 3 L.Ed.2d 979 (1959); Bunn v. United States, 8 Cir., 260 F.2d 313, 315–316 (1958); Williams v. United States, 8 Cir., 260 F.2d 125, 131–132 (1958), cert. denied, 359 U.S. 918, 79 S.Ct. 596, 3 L.Ed.2d 579 (1959).

In view of the foregoing rule and the overwhelming evidence of guilt under Count Three, our discussion of the evidence will be limited to that count.

3. Mervin, openly defiant to and uncooperative with the administrative officials legally designated to carry out the farm program, filed numerous pretrial motions challenging virtually every aspect of the case against him. Typically, in a Motion to Challenge Jury List, Mervin attacked a juror on the ground that the juror would be "prejudiced in favor of the communistic Agricultural Adjustment Act of 1938 and would therefore be very unlikely to render any verdict not in conformity with the agrarian policies of the Communist Party U.S.A. and said agrarian policies being represented in the aforesaid Act."

In May, 1955, pursuant to a prior conference with an Internal Revenue Agent, appellant Loren R. Gajewski presented to the agent income tax returns purporting to show farming operations and income tax liability of Otto Gajewski for the years 1951, 1952 and 1953. Returns had not previously been filed by Otto or Lillia for said years.[4] In the 1951 return Loren and Arden Gajewski, another adult son of Otto A. and Lillia B., were listed and claimed by Otto as dependents. In the 1952 return, Loren, Mervin and Arden were claimed as dependents and in the 1953 return, Loren and Mervin were so claimed. During the interview with the agent, Loren admitted that he had prepared the 1951, 1952 and 1953 returns for his father. For the years 1954 through 1959, returns were filed in which both appellants were claimed as dependents.[5]

By claiming appellants as dependents, Otto and Lillia were able to avoid the tax liability which would have been imposed if the reports had not falsely and fraudulently shown that appellants were dependents of the taxpayers.

Under the 1954 Internal Revenue Code, 26 U.S.C.A. §§ 151, 152, a child of a taxpayer may be claimed as a dependent if he has received over half of his support from the taxpayer for the calendar year in which the taxable year of the taxpayer begins, and if either the child has not attained the age of 19 years, or has a gross income for the year of less than $600. See also, Internal Revenue Code, 1939, 26 U.S.C.A. § 25. Here it was conclusively established that appellants, adult individuals who were actively and extensively engaged in farming operations and who also received other income, had gross income far in excess of $600 in each of the taxable years in question, and neither received more than half of his support from his parents.

There was also evidence in abundance from which the jury could find that appellants had unlawfully entered into a conspiracy to cause the false and fraudulent tax returns to be filed on behalf of Otto and Lillia. An expert Government witness testified that the same typewriter had been used to prepare all of the questioned returns. It stands undisputed that Loren prepared the returns for his father for 1951, 1952 and 1953. It was shown that Mervin was present on one of the occasions when the Internal Revenue Agent had a conference with Loren in regard to the filing of the returns. Additionally, the evidence supports an inference that Mervin was the moving and dominating influence in the activities and conduct of appellants which culminated in the returning of the indictment.

As is typical of conspiracy prosecutions, the evidence to establish the conspiracy was largely circumstantial, but, as we observed in Isaacs v. United States, 8 Cir., 301 F.2d 706, 724 (1962), cert. denied, 371 U.S. 818, 83 S.Ct. 32, 9 L. Ed.2d 58 (1962):

"A fraudulent scheme and conspiracy may be and usually is established by circumstantial evidence; by inferences from the evidence of relationship of the parties and by overt acts, conduct and other probative circumstances." (Citing cases).

In summary, the evidence to support all elements of the third count was very persuasive, and the submission of the count to the jury and the resultant verdicts of guilty were fully justified.

 A point raised by appellants in their initial brief, unsupported by any authority and seemingly raised as an

---

4. Neither appellant filed a return for the years 1951 through 1958 although the Government's evidence showed they had gross income for each of said years in an amount requiring the filing of a return. Loren filed a return for the year 1959, which, as noted, is the subject of Count Four of the indictment.

5. In 1951 Otto was over 65 years of age and since his spouse was also a dependent, he claimed credit for a total of five dependents. In 1952 Lillia was also over 65 and credit was taken for seven dependents; in 1953 through 1959 credit was taken for a total of six dependents.

afterthought, is that Count Four of the indictment, said to be "clearly an Income Tax case" and lodged only against Loren, was improperly joined with the conspiracy counts instead of being "separated and left alone to stand on its own feet." Even if the indictment were vulnerable to attack for misjoinder of offenses and defendants—a viewpoint we find untenable—the proper remedy, not pursued by appellants, would have been a motion for severance or for a separate trial under Rule 14, Fed.R.Crim.P. Kleven v. United States, 8 Cir., 240 F.2d 270, 272 (1957); Finnegan v. United States, 8 Cir., 204 F.2d 105, 109 (1953), cert. denied, 346 U.S. 821, 74 S.Ct. 36, 98 L.Ed. 347 (1953); United States v. Goodman, 5 Cir., 285 F.2d 378, 379 (1960), cert. denied, 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389 (1961); United States v. J. Tirocchi & Sons, Inc., D.R.I., 187 F. Supp. 778, 780 (1960). Nevertheless, we have considered the merits of the contention for the purpose of determining whether there was a misjoinder requiring the court, on *Cs own initiative*, to invoke Rule 14 and thereby order an election or a separate trial of Count Four, or grant a severance. Compare Kansas City Star Co. v. United States, 8 Cir., 240 F.2d 643, 651–653 (1957), cert. denied, 354 U.S. 923, 77 S.Ct. 1381, 1 L.Ed.2d 1438 (1957), and Malatkofski v. United States, 1 Cir., 179 F.2d 905, 909 (1950) [cases emphasizing trial courts' discretionary power to deny motion for severance], with Ingram v. United States, 4 Cir., 272 F.2d 567 (1959) [no discretion to deny severance where multiple defendants are charged with offenses in no way connected]. See also, United States v. Har-

vick, D.N.D., 153 F.Supp. 696 (1957). Upon reasonable consideration of the indictment in its entirety, we conclude that it satisfies the requirements of Rule 8, Fed.R.Crim.P.,[6] and that appellants were in no respect prejudiced by the joinder of the offenses and the joint trial. See, Kleven v. United States, supra, 240 F.2d 270; Robinson v. United States, 93 U.S.App. D.C. 347, 210 F.2d 29 (1954); United States v. J. Tirocchi & Sons, Inc., supra, 187 F.Supp. 778; United States v. Bachman,. D.D.C., 164 F.Supp. 898 (1958); United States v. Welsh, D.D.C., 15 F.R.D. 189 (1953), affirmed, 95 U.S.App.D.C. 93, 220 F.2d 200 (1955).

■ Without having properly objected at the trial and without having raised the point in their initial brief on appeal, appellants contend for the first time in their supplementary brief that certain records reported to or acquired by the Secretary of Agriculture were illegally obtained by the prosecution and improperly admitted in evidence in violation of Title 7 U.S.C.A. § 1373(c).[7] The records, apparently maintained in the McKenzie County Agricultural Stabilization Conservation Office, related primarily to registration and operation of the South Farm under the Act, and were introduced in evidence as to Count One. Diligent search of the record discloses that although objections were made to the introduction of some of the questioned records, there was not even the slightest suggestion, much less an objection, by either appellant that the records were inadmissible because of the above-mentioned statute. Under familiar rules we, as a reviewing court, are not required

6. In summary, Rule 8(a) provides that separate offenses may be charged in separate counts of a single indictment if they are of similar character or are based on the same act or transaction or upon transactions which are connected or that constitute a common scheme or plan.

Rule 8(b) provides, in substance, that several defendants may be charged together or separately in one or more counts of a single indictment if the defendants are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.

7. Title 7 U.S.C.A. § 1373(c) provides:
"All data reported to or acquired by the Secretary pursuant to this section shall be kept confidential by all officers and employees of the Department, and only such data so reported or acquired as the Secretary deems relevant shall be disclosed by them, and then only in a suit or administrative hearing under this chapter."

to consider or review actions of omission or commission by the trial court unless the complaining party made known to that court "the action which he desires the court to take or his objection to the action of the court and the grounds therefor." Rule 51, Fed.R.Crim.P.; Litton v. United States, 8 Cir., 177 F.2d 416, 418 (1949), cert. denied, 339 U.S. 921, 70 S. Ct. 620, 94 L.Ed. 1344 (1950); United States v. Miller, 6 Cir., 316 F.2d 81, 83 (1963); Swift v. United States, 10 Cir., 314 F.2d 860, 862 (1963); White v. United States, D.C.Cir., 314 F.2d 243, 245 (1962); Landers v. United States, 5 Cir., 304 F.2d 577, 578–579 (1962).

■ But quite apart from the question of reviewability, we further note that even if it be assumed that the statute relied upon is an absolute bar to introduction of the records in this criminal proceeding—a question we need not and do not decide—the alleged error in admitting the records was not prejudicial. For despite appellants' efforts on appeal, they have been unable to demonstrate that the records, though primarily introduced in support of Count One, actually supported and led to their convictions under the other counts as well. As previously demonstrated, there was ample evidence of appellants' guilt under Count Three, independent of the records, which at the most, were merely cumulative evidence as to this count and in nowise led to the convictions thereon. Williams v. United States, supra, 260 F.2d 125, 131–132; United States v. Miller, supra, 316 F.2d 81, 83. Therefore, again as indicated previously, since the sentences imposed do not exceed the maximum authorized as punishment for the offense charged in Count Three, we need not consider what effect, if any, admission of the records, even if improper, had upon the other counts.

In their supplementary brief, appellants, once again for the first time on appeal, assert that they were denied a fair trial by reason of having been prosecuted by their former attorney. While we might have been justified in refusing to consider this contention since concededly appellants made no objection on this ground in the trial court, we nevertheless have given it careful scrutiny.

■ Certainly it would be improper for a United States district attorney to prosecute a defendant on the basis of facts wholly or partially acquired by the prosecutor through prior professional relations as the accused's private attorney. 7 Am.Jur. 2d, Attorneys at Law § 158; 5 Am.Jur., Attorneys at Law § 66; 27 C.J.S. District & Pros.Attys. § 12(6) (c). But equally as certain, according to the same authorities, the mere fact that a prosecuting attorney previously represented an accused in a civil matter does not ipso facto require disqualification of the attorney in the criminal proceeding. If there is no substantial relationship between the former civil representation and the present criminal prosecution, and if the prosecutor will not be called upon to use against his former client any confidential knowledge gained through their former association, no prejudice will result to the accused. See Annot., 52 A. L.R.2d 1243, 1262 (1957); Marco v. Dulles, S.D.N.Y., 169 F.Supp. 622 (1959); United States v. Standard Oil Company, S.D.N.Y., 136 F.Supp. 345 (1955).

Here, Mr. John Garaas, the United States Attorney for the District of North Dakota, had represented appellants as a private attorney on only one occasion— an action in 1952 involving cancellation of oil leases on appellants' land. It was not until July, 1961, that Mr. Garaas became United States Attorney, some eight months *after* the indictment in this case was returned. Careful examination of the transcript and the briefs convinces us beyond a doubt that in prosecuting appellants, Mr. Garaas violated neither the letter nor the spirit of the Canons of Professional Ethics, and that his prior representation of them in no degree deprived appellants of a fair trial. Indeed, appellants did not object to the appearance of Mr. Garaas for the prosecution at the time of trial, have failed in this court to demonstrate that Mr. Garaas acquired confidential information during his representation of appellants that was

pertinent to the prosecution, and have shown no conceivable manner in which his participation in the trial could have been prejudicial to them.

Appellants further contend that the court erred in refusing to permit them to call as witnesses the Deputy Clerk of Court and the United States Attorney who prosecuted the case against them.[8] Basic to appellants' argument is their belief that the Sixth Amendment right "to have compulsory process for obtaining Witnesses" prohibits, absolutely and virtually without exception, a court from refusing to permit persons to be called by the defense to testify, to be sworn, and to have questions propounded to them. Opposed to this view, appellee (Government) contends that the provisions of the Sixth Amendment are wholly inapplicable; that no question is presented concerning appellants' right to have witnesses in their favor subpoenaed since no subpoenas were asked for and since both the Clerk and the United States Attorney were already present in the courtroom; and that the trial court properly exercised its authority and duty to conduct the trial in an orderly manner and to keep immaterial matters out of the record.

Review of the record reveals that appellants were properly appraised of their subpoena rights under the Sixth Amendment, and that, rather than being confronted with a Sixth Amendment issue, we are here presented with a question of the trial court's discretionary power to control the proceedings.

▆▆▆ Generally, a trial court has wide discretion respecting examination of witnesses. Brennan v. United States, 8 Cir., 240 F.2d 253, 262 (1957), cert. denied, 353 U.S. 931, 77 S.Ct. 718, 1 L.

Ed.2d 723 (1957); London Guarantee & Accident Co. v. Woelfle, 8 Cir., 83 F.2d 325, 334 (1936); Burns v. United States, 10 Cir., 286 F.2d 152, 157 (1961); Sachs v. United States, 9 Cir., 281 F.2d 189, 191 (1960), cert. denied, 364 U.S. 909, 81 S. Ct. 272, 5 L.Ed.2d 224 (1960); Leathers v. United States, 9 Cir., 250 F.2d 159, 164–165 (1957). More particularly, under appropriate circumstances, a court may refuse to even allow a witness to take the stand. May v. United States, 84 U.S.App.D.C. 233, 175 F.2d 994, 1010 (1949), cert. denied, 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505 (1949); Overholser v. De Marcos, 80 U.S.App.D.C. 91, 149 F.2d 23, 26 (1945), cert. denied, 325 U.S. 889, 65 S.Ct. 1579, 89 L.Ed. 2002 (1945). Courts are especially reluctant, and rightfully so, to allow lawyers, including prosecuting attorneys, to be called as witnesses in trials in which they are advocates. Robinson v. United States, 8 Cir., 32 F.2d 505, 510, 66 A.L.R. 468 (1928); United States v. Clancy, 7 Cir., 276 F.2d 617, 636 (1960), reversed on other grounds, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); United States v. Alu, 2 Cir., 246 F.2d 29, 33–34 (1957); 97 C.J.S. Witnesses § 113; Annot., 149 A.L.R. 1305. Although, as the above authorities indicate, such judicial discretion is generally exercised to prevent testimony by an advocate in *favor* of the party whom he represents, a court may, without abusing its discretion, refuse to allow the *defense* to call as a witness the United States Attorney trying the case. Fisher v. United States, 9 Cir., 231 F.2d 99, 104 (1956).

▆▆▆ To be sure, an accused's right to call relevant witnesses and to present a complete defense may not be abrogated for the sake of trial convenience or for the purpose of protecting a United States Attorney from possible em-

---

8. Only Mervin Gajewski, conducting his own defense at the trial, attempted to call these witnesses, and in the first brief on appeal, objection to the lower court's refusal to permit the witnesses to testify was made on behalf of Mervin only. Subsequent briefs on appeal raise

the point for both Mervin and Loren, claiming that Mervin was acting for both himself and Loren even though Loren had his own attorney. We have considered this assignment of error as to both appellants.

barrassment while testifying, if he possesses information vital to the defense. But here, the trial court was fully justified in requiring appellant Mervin Gajewski to indicate in advance the general nature of the testimony he desired to elicit from both the Clerk and the United States Attorney, for Mervin had previously attempted to inject into the trial irrelevant, extraneous, and often inflammatory evidence, and had repeated such efforts despite court rulings prohibiting its admission. Mervin revealed that he wished the Clerk to identify the records in certain pending civil actions in which Mervin was involved—actions which the trial court then held to be irrelevant to the criminal proceeding. As to the United States Attorney, Mervin claimed that Mr. Garaas, prior to becoming prosecutor, had obtained confidential information material to the case in a conversation with Loren Gajewski. After hearing Mr. Garaas' account of the alleged confidential conversation, the trial court ruled that he could not be called to testify.[9] On this record, we would be unwarranted in holding that the trial court abused its discretion in refusing to allow the Clerk and the United States Attorney to be called as witnesses.

Other contentions alleging various procedural errors have been carefully considered, and are wholly without merit. The assailed rulings on evidentiary matters were not prejudicial; certain instructions offered by appellants were properly refused either because they did not correctly declare the law or were covered by instructions given by the court. The record reveals that appellants' rights were zealously protected throughout the entire proceeding, and that nothing occurred which justifies the granting of another trial.

The judgments are

Affirmed.

9. At the trial, Mr. Garaas stated in the record that the conversation concerned the pros and cons of the farm program generally, that the conversation was not material to the criminal proceeding, and that he had "no more knowledge of the

fact than what is in the newspapers." Not in the record, but in the briefs on appeal, it was revealed that the conversation had occurred at a picnic in September, 1960, in the presence of others as well as Loren and Mr. Garaas.