In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00092-CV


______________________________




ROY JON, Appellant



V.



REGINALDO STANLEY, ET AL., Appellees




 


On Appeal from the 202nd Judicial District Court


Bowie County, Texas


Trial Court No. 01C1442-202




 




Before Morriss, C.J., Grant and Ross, JJ.


Opinion by Chief Justice Morriss



O P I N I O N



 Roy Jon appeals the dismissal of his suit against Reginaldo Stanley, Patricia Barron, Nora
McClure, Winston Young, Charlotte Bussey, Mary Gotcher, Jerry Richardson, the Texas Department
of Criminal Justice-Institutional Division, and the University of Texas Medical Branch. The trial
court signed the order of dismissal on January 23, 2002; therefore, the notice of appeal had to be
filed within thirty days (February 22, 2002), or within ninety days (April 23, 2002) if Jon filed a
timely motion for new trial, motion to modify the judgment, motion to reinstate, or request for
findings of fact and conclusions of law. Tex. R. App. P. 26.1(a).

 Jon filed his notice of appeal on May 30, 2002. The record shows Jon filed a motion to
reform the judgment on March 1, 2002. That motion was untimely because it was not filed within
thirty days of the date the judgment was signed. Tex. R. Civ. P. 329b(g). Therefore, Jon had to file
his notice of appeal by February 22, 2002.

 There is some indication the mailbox rule would make Jon's motion to reform the judgment
timely. See Tex. R. App. P. 9.2(b). The motion itself indicates Jon signed it on February 22, 2002,
but the record is unclear when it was mailed. Even if Jon's motion were timely, however, his notice
of appeal was still untimely, because it was filed on May 30, 2002, over a month after the date on
which it was due, April 23, 2002. Therefore, this Court is without jurisdiction over the appeal.



 The appeal is dismissed for want of jurisdiction.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 3, 2002

Date Decided: July 5, 2002


Do Not Publish




g., In re Meador, 968 S.W.2d 346, 350 (Tex. 1998); In re Goodman,
210 S.W.3d 805, 809-16 (Tex. App.--Texarkana 2006, orig. proceeding); In re Works, 118 S.W.3d
906, 908-09 (Tex. App.--Texarkana 2003, orig. proceeding). While the disciplinary rules are
merely guidelines for court-ordered disqualification (rather than controlling standards), these rules
do provide guidance--even in cases where an attorney may not have clearly violated one of this
State's disciplinary rules. In re EPIC Holdings, Inc., 985 S.W.2d 41, 48 (Tex. 1998); Meador, 968
S.W.2d at 351; see also Anderson Producing, Inc. v. Koch Oil Co., 929 S.W.2d 416, 421 (Tex.
1996); Gonzalez v. State, 117 S.W.3d 831, 837-38 (Tex. Crim. App. 2003) (using Tex.
Disciplinary R. Prof'l Conduct 3.08 as guideline); House v. State, 947 S.W.2d 251, 252-53 (Tex.
Crim. App. 1997) (citing Rule 3.08, cmt. 10, which states: "this rule may furnish some guidance");
Works, 118 S.W.3d at 909; In re Bahn, 13 S.W.3d 865, 872 (Tex. App.--Fort Worth 2000, orig.
proceeding).

 Rules 1.05 and 1.09 of the Texas Rules of Disciplinary Procedure are pertinent to Young's
prior and current representation in the proceeding now before this Court. Rule 1.05 provides that,
with certain exceptions not applicable here,

 [A] lawyer shall not knowingly . . . (2) [u]se confidential information of a client to
the  disadvantage  of  the  client  unless  the  client  consents  after  consultation  [or]
(3) [u]se confidential information of a former client to the disadvantage of the former
client after the representation is concluded unless the former client consents after
consultation or the confidential information has become generally known. 


Tex. Disciplinary R. Prof'l Conduct 1.05(b), reprinted in Tex. Gov't Code Ann., tit. 2, subtit.
G app. A (Vernon Supp. 2006) (Tex. State Bar R. art. X, § 9). Rule 1.09 concerns conflicts of
interest:

 Without prior consent, a lawyer who personally has formerly represented a client in
a matter shall not thereafter represent another person in a matter adverse to the
former client . . . if the representation in reasonable probability will involve a
violation of Rule 1.05; or . . . if it is the same or a substantially related matter. 


Tex.  Disciplinary  R.  Prof'l  Conduct  1.09(a),  reprinted  in  Tex.  Gov't  Code  Ann.,  tit.  2,
subtit. G app. A (Vernon Supp. 2006).

 A prosecutor should be disqualified when the matter being prosecuted is the same matter for
which that attorney previously represented the accused. Ex parte Morgan, 616 S.W.2d 625, 626
(Tex. Crim. App. 1981); see also Ex parte Spain, 589 S.W.2d 132, 133-34 (Tex. Crim. App. 1979);
Tex. Comm. on Prof'l Ethics, Op. 538, 64 Tex. B.J. 698 (2001) (discussed further below). For
example, if an attorney previously represented a husband who is accused of murdering his wife, the
attorney may not now prosecute the State's case against the husband for that same alleged murder. 
In such a situation, 

 there exists the very real danger that the district attorney would be prosecuting the
defendant on the basis of fact acquired by him [or her] during the existence of his [or
her] former professional relationship with the defendant. Use of such confidential
knowledge would be a violation of the attorney-client relationship and would be
clearly prejudicial to the defendant.

Morgan, 616 S.W.2d at 626 (referencing Gajewski v. United States, 321 F.2d 261 (8th Cir. 1963)). 
In Morgan, Texas' highest criminal court found that an attorney who had formerly represented a
defendant at trial (in which the defendant received a probated sentence) was prohibited from
subsequently representing the State at a hearing regarding the revocation of that same defendant's
probated sentence in the case for which that attorney had represented the defendant. Id. at 626. Such
a conflict of interest inherently rose to the level of a due-process violation. Id. The court reached
a similar conclusion in Spain. 589 S.W.2d at 134 (attorney could not represent State at probation
revocation hearing for same case in which counsel previously served as defense attorney).

 In 1998, the Texas Supreme Court reviewed an original proceeding in which several
defendants sought the disqualification of the plaintiff's attorneys. See EPIC Holdings, 985 S.W.2d
at 43-44. (3) The defendants alleged the plaintiff's lawsuit against them involved proceedings that were
"substantially similar" to the legal services previously provided to the defendants by the now adverse
attorneys. Id. The plaintiff's lawyers had previously helped draft the articles of incorporation for one
of the defendants, and one of the plaintiff's claims sought to attack the validity of the work
previously completed for the defendants. Id. at 50-51. Justice Hecht, writing for a 6-3 majority,
agreed disqualification was appropriate:

 We  have  held  that  two  matters  are  "substantially  related"  within  the  meaning
of Rule 1.09 when a genuine threat exists that a lawyer may divulge in one matter
confidential information obtained in the other because the facts and issues involved
in both are so similar. Such a threat exists here, when information Johnson & Gibbs
lawyers obtained from George and EPIC in 1988 may be relevant in the prosecution
of Anderson's claims. An actual disclosure of confidences need not be proven; the
issue is the existence of a genuine threat of disclosure because of the similarity of the
matters. 


Id. at 51 (footnotes omitted). Thus, the maxim we take from EPIC Holdings is that, where a
subsequent matter is "substantially related," the attorney may also be prohibited from representing
a party adverse to the former client. See also Metro. Life Ins. Co. v. Syntek Fin. Corp., 881 S.W.2d
319, 320 (Tex. 1994). This "substantial relationship" test is a product of common law and predates
the Texas Rules of Disciplinary Conduct for attorneys. In re Cap Rock Elec. Coop., 35 S.W.3d 222,
230 (Tex. App.--Texarkana 2000, orig. proceeding).

 In 2001, the Texas Center for Legal Ethics and Professionalism was asked to address whether
"a lawyer, who is the newly elected district attorney, [is] prohibited from prosecuting a former client
in a new criminal proceeding." Tex. Comm. on Prof'l Ethics, Op. 538. While opinions of the Texas
Ethics Commission are advisory, rather than binding, Opinion 538 addressed issues similar to those
now before this Court. The opinion acknowledged that, under Rule 1.09, an attorney is prohibited
from representing a party adverse to a former client if the matter then being litigated would be
considered "substantially related" to the prior representation. Id. "The 'substantially related' aspect
primarily involves current proceedings where a lawyer could have acquired confidential information
in a previous representation that could now be used to the former client's disadvantage or the
advantage of a current client or some other person." Id. (referencing Comment 4, Rule 1.09). The
ethics opinion then noted that the "confidentiality rules are designed to encourage such free
discussions with the added guarantee that confidentiality will continue even after the attorney-client
relationship is terminated," but that allowing an elected district attorney to prosecute a former client
ultimately "undermine[s] our legal system." Id. (referencing Comments 1 and 8, Rule 1.05). The
only way the elected prosecutor could avoid an ethical conflict would be if he or she proceeded
cautiously, "ignoring any fact known by the new prosecutor about the former client as a result of the
former representation." Id. But, continued the ethics committee, this is not an adequate solution:

 Although a prosecutor has the responsibility to see that justice is done and not simply
be an advocate, Comment 1, Rule 3.09, the prosecutor is still obligated to act with
competence,  commitment  and  dedication  on  the  State's  behalf.  Comment  6,
Rule 1.01. Adherence to the Rules places an impossible burden on an effective
prosecutor and creates an almost certain probability that in the adversarial trial
setting, confidentiality will be compromised. Similarly, to obtain and ensure
protection, the objecting former client is forced to divulge the very same confidential
information he seeks to prevent from disadvantageous use, thus defeating the purpose
of the rules. These conflicting obligations impose conflicting duties on both the
prosecutor and the former client and thus requires [sic] prohibition of this practice,
absent the former client's consent. See Comment 7 to Rule 1.06. 


Id.

 Before trial, Landers filed a motion to disqualify Young on the basis that he had previously
represented her "in a prior case involving similar facts and issues in controversy." Specifically,
Landers claimed Young's prior representation of her in Lamar County cause number 19233 (in which
she was charged with intoxicated assault but convicted of misdemeanor driving while intoxicated)
created a conflict of interest that required Young's disqualification. 

 The trial court received testimony and heard argument on the disqualification motion
September 19, 2006. Landers testified at the hearing, stating she had been previously charged with
intoxication assault in 2002 or 2003 and was, for that case, represented by Young. Questioned by
her attorney, Landers testified:

Q: And as a result of that case, you divulged some information that was personal
to you to him [Young] representing you and that case in which he ultimately reduced
the case down to 180 days in jail?


A: Yes.


Q: Do you feel like your rights as a citizen of the United States would be violated
if he were prosecuting you in this case?


A: I do.


 [Defense counsel]: No further questions.


Then, Lloyd Whelchel, assistant county attorney, questioned Landers at some length:

Q: Mrs. Landers, what information did you give Mr. Young?


A: He was privy to my criminal history.


Q: What else?


A: He was privy to my history and background information.


Q: Like what? You're telling the court -- what information did you give him --


A: It's  difficult  for  me  to  recall  at  this  time  precisely  what  information  I
gave Mr. Young as my attorney. However, he was entitled to information he should
not be able to use against me in this case.


Q: Like what?


A: I don't remember specifically. I don't recall.


Q: You would agree with me that your criminal history is a matter of public
record?


A: Yes.


Q: Any prosecutor in the State of Texas is going to have access to the
information?


A: That's true. But also he himself has access to information regarding my
friends, which two of those friends are being used against me in this case.


Q: If people are being used as witnesses in this case, that means they saw
something?


A: No, they weren't even there.


Q: Mrs. Landers, hold on. They either saw something in 2005 when you
committed this murder or they were witnesses to something that occurred back in
2003, 2002 on your previous case. Those names are contained in offense reports that
would be available to any prosecutor. Do you agree with that?


A: No, sir.


Q: So you don't think their names and the offense reports, anybody could not
have access to that information?


A: No.


Q: Give us the names of the witnesses that you have that you think --


A: Amy Burrows, William Hindman and Steve Burrows.


Q: Mrs. Landers, would you be surprised to learn that their names are contained
in the offense reports involving this offense?


A: Yes. 


Q: Their names are in the offense report from the 2005 case that you are
currently charged with?


A: Correct.


Q: So really anything that occurred in it doesn't --


A: It does. There was information divulged about them and asked about them
in that case.


Q: But the fact that their names are listed is simply a reflection of the fact that
they witnessed things that occurred in 2005. Would you agree with that?


A: No, sir.


Q: Anybody can go ask them questions and find out your habits and your --


A: No, sir.


Q: Do you also agree that they have known you for a number of years and any
prosecutor can look at the names on the offense reports and ask them questions?


A: Someone -- Gary asked me questions and I divulged the information.


Q: Do you agree with me that it doesn't matter who prosecutes you, they will
have access to that same information?


A: Yes.


(Emphasis added.) Young also testified:

Q: Mr. Young, the information you heard Mrs. Landers complain of, is that
information contained in the current offense report from 2005?


A: Yes.


Q: Is that information any prosecutor would have access to?


A: Yes.


Q: The individuals that she named, any prosecutor can go ask them questions as
to 2002 or 2003?


A: It doesn't have anything to do with those. It has to do that she was with a
Steve Burrows just prior to the accident when Mr. Nelson was killed, that she was
going over to Amy Burrows and Chip Hindman's house. It has nothing to do with
any prosecution with Mrs. Landers.


Q: As a matter of fact, at a previous plea bargain date, had Mrs. Landers
expressed to you that she had no objection to you prosecuting the case, is that
correct?


A: Yes.


 [The State]: Pass the witness.


Then, Ben Massar, Landers' defense counsel, cross-examined Young:


Q: Mr. Young, during your representation of Mrs. Landers back in 2002, 2003,
did you discover during your representation that she had a long history of alcohol
abuse?


A: I think that's obvious from the criminal history.


Q: Did you learn of any --


A: I don't intend to use anything she told me in any manner. We will introduce
the judgments and sentences as it relates to those cases and that's it.


 [Defense counsel]: No further questions.


(Emphasis added.) The lower court then denied Landers' motion to disqualify Young. 

 The record before the trial court at the time of the pretrial hearing shows the current case
involves allegations that were very similar to the original allegations contained in the 2002 charges. 
What is lacking from the pretrial record, however, is any indication that Young possesses unique,
confidential information about Landers or her 2002 case or that there exists a "genuine threat of
disclosure" of any confidential information. 

 Landers' fears at the pretrial hearing concerned the circumstances surrounding the 2002
accident, her criminal history, and the three named friends. But the record also shows that Young's
awareness of Landers' alcohol and cocaine use (as factors contributing to the 2002 accident) were
already known by the police, as those items were specifically mentioned in the official report. Any
substitute prosecutor for the current case could easily obtain a copy of the 2002 police report and
learn of Landers' prior alcohol and substance abuse problems. As such, Young's knowledge is
neither unique nor confidential. The same is true of Landers' criminal history. And, as Young
explained, Landers' three mentioned friends were potential witnesses already known to the State as
a result of the 2005 police investigation; the State did not learn of those witnesses as a result of any
confidential disclosure made by Landers to Young during the scope of the 2002 attorney-client
relationship. Accordingly, because Landers failed to carry her burden of establishing a genuine
threat that Young would disclose unique, confidential information learned by him during the scope
of his 2002 representation of Landers, the trial court did not err by denying Landers' pretrial motion
to disqualify Young.

 At the hearing on Landers' motion for new trial, the trial court ordered the State to produce
its case file in this matter to the court for an in camera inspection. The trial court also received
testimony from Young and Landers. 

 Young testified that he served as Landers' defense attorney on the prior intoxicated assault
charge for which Landers was convicted only of driving while intoxicated. During the scope of that
representation, Young received copies of Landers' medical records as part of the State's discovery
disclosures. Young also knew about Landers' possible use of both alcohol and cocaine--a thread
that was common to both the 2002 charge and the charge now on appeal. Young, however,
explained that this information was public knowledge, as it had been reported in the local newspaper
and had been referenced in the police department's original offense report for the 2002 charge. 

 Young was also asked about whether, during that prior representation of Landers, he had
learned that Landers had been abusive to her hospital care providers in 2002 or that her drug and
alcohol abuse problems rendered her unable to be an adequate parent. Young denied being aware
of these issues until they were either brought out during or after the trial in the current case. 

 Defense Exhibit 8, admitted during the hearing on Landers' motion for new trial, is a
supplemental police report concerning the 2002 intoxication assault charge. The report states that
doctors from St. Joseph's Hospital informed the police department that a blood specimen taken from
Landers shortly after her 2002 accident tested positive for alcohol, cocaine, and marihuana. Defense
Exhibit 9, also admitted at the hearing, includes Young's personal notes from his client interview
session with Landers in 2002; those notes include more specific details about Young's use of alcohol,
cocaine, and marihuana as it related to the 2002 incident. Young later described Exhibits 8 and 9
as containing information that could easily be found in the public records. 

 Defense Exhibit 10 is a collection of Landers' medical records filed with the district clerk's
office in connection with Landers' 2002 charges. These medical records note that the nurses could
smell alcohol on Landers' breath, that Landers was very combative toward her caregivers during
treatment, and that Landers' toxicology tests revealed positive results for controlled substances. 

 Young testified he did not use, in his current prosecution of Landers, any confidential
information obtained from his 2002 representation. Nor, according to his continued testimony, did
Young review his 2002 defense file in preparation for prosecuting Landers on the current charge. 

 Landers also testified. First, she acknowledged that her medical records were available to
the  State  in  2002  due  to  the  nature  of  the  charges  she  then  faced.  See  Tex.  Transp.  Code
Ann. § 724.012 (Vernon Supp. 2006). She then told the trial court that in 2002 she revealed
confidential information to Young about the 2002 crime. Specifically, she told Young that she had
been under the influence of crack, marihuana, and alcohol at the time of the accident. Landers then
complained that Young had used this information to cross-examine her during the current
proceedings. But, that information, too, had already been available to the State by virtue of their
ability to obtain Landers' medical records shortly after that accident. Accordingly, Young's general
knowledge of such (that Landers' use of alcohol, marihuana, and cocaine as a causal factor of the
2002 crime) cannot, on this appellate record, be said to be the unique result of Landers' confidential
disclosure.

 Second, Landers testified that in 2002 the State offered her a plea bargain of four years in
prison. Landers had believed this offer was too high to accept, and Young told her that the high offer
was made, in part, due to her combative behavior toward the hospital caregivers who attended to her
treatment immediately following that accident. At trial in the present case, Young cross-examined
Landers on her combative behavior toward the emergency medical personnel who attended to
Landers immediately following the accident. Young then tried to draw parallels between Landers'
behavior following the 2002 incident and that following the current intoxication assault. 
Nevertheless, the issue of whether Landers had been combative toward hospital caregivers in 2002
was obviously a consideration already known by the State in 2002, as it was a fact mentioned in
Landers' 2002 medical records, which were already in the State's possession before Young became
the elected county attorney. Accordingly, the State did not "acquire" the information about Landers'
2002 combative behavior via the revelation of confidential information by Young after he became
the elected prosecutor.

 Third, Landers complained in her testimony that Young unfairly cross-examined her about
the fact that her lengthy history of drug use required her to give custody of her children to her
parents. Landers opined that Young was able to cross-examine her about her lack of parenting skills
only because she, back in 2002, had told Young that she and her children then lived with her parents. 
However, Landers herself testified on direct examination at trial that she had a thirty-year history of
abusing alcohol, illegal narcotics, and prescription drugs. Therefore, Young's ability through cross-examination to correlate Landers' drug abuse with her relinquishment of custody was enabled not
by Young's prior service as Landers' attorney, but by the testimony which Landers herself gave on
direct examination. Moreover, the facts of this case as well as Landers' own criminal history (which
contains numerous alcohol and drug-related crimes over a ten-year period) both suggest Landers has
a substance abuse problem, a conclusion that can easily be reached without the aid of any
confidential information from Landers. As such, the record before us does not reveal Young either
possessed or used unique, confidential information about Landers' history of drug and alcohol abuse
in prosecuting this case.

 Finally, Landers complained in her testimony that Young used confidential information about
her criminal history to cross-examine her in the current trial. Specifically, she contended at the
hearing on her motion for new trial that Young cross-examined her about the specifics of a robbery-by-threat conviction she had. Landers testified to telling Young in 2002 that the robbery conviction
was the result of her merely accompanying someone else who committed the crime; Landers
contended she was convicted as a party, not as a principal, to the offense. According to Landers,
Young used this information during the current trial to portray Landers as someone who always
denies responsibility for her actions, and as someone deserving of a greater punishment than
someone else who accepts responsibility for his or her actions. 

 We do not find support for Landers' claims in the reporter's record. It is true that Young
asked Landers about the circumstances surrounding her involvement in the 1993 robbery of a
pharmacy. And it is correct that Young asked Landers whether she was blaming her entire criminal
history on her substance abuse problems. But it is also clear that a state prosecutor would have been
entitled to ask Landers about the specific circumstances of any of her prior criminal offenses, as well
as how those crimes were committed and how they impacted the victims. See Tex. R. Evid. 608(b),
609; Tex. Code Crim. Proc. Ann. art. 37.07, § 3 (Vernon 2006). It is also clear from the record
that Landers had already testified about her belief that her criminal history was the direct result of
her drug and alcohol abuse. Thus, we cannot say the record supports the allegation that Young used
confidential information as part of the State's punishment case against Landers.

 Finally, in its appellate brief for this case, the State invites us to reconsider our opinion in 
Goodman, 210 S.W.3d 805. In Goodman, we ruled pretrial that Young must be disqualified from
prosecuting Goodman, a former client, because Young had gained, during his prior representation,
confidential knowledge of Goodman's drinking habits and volumes, which were directly relevant to
the pending charge for which Young intended to prosecute Goodman. We believe the facts of
Goodman are distinguishable from the case at bar, in that Goodman was able to direct us to unique
and confidential information possessed by Young that, if used by Young in prosecuting Goodman,
would present a "genuine threat" to Goodman's due-process rights. Landers has not made such a
showing here, and Landers' trial has occurred. We see no reason to withdraw our analysis of the
discrete facts and procedural situation presented in Goodman.

 As we stated in Goodman, an accused has the burden of demonstrating that the prosecutor
used, in the current proceeding, information which the prosecutor learned from the accused during
the scope of the prosecutor's prior service as the accused's defense counsel. Id. at 808. In this case,
each item that Landers contends was the product of confidential information used by Young actually
had its genesis either from Landers' medical records (which were already in possession of the State
in 2002), from Landers' criminal history (which was already in the State's possession in both 2002
and 2005), or from other sources (such as Landers herself when she testified in her own defense). 
Landers has not provided any evidence that Young used any confidential information from the 2002
representation in prosecuting the current case. Accordingly, we overrule each of Landers' points of
error.

 We modify (4) the trial court's judgment in two respects: the offense for which Landers was
convicted is amended from "Intoxication Assault" to "Intoxication Manslaughter," and the "statute
for the offense" referenced therein is amended from Sections "49.07 and 12.42" to Sections "49.08
and 12.42."

 


 As modified, we affirm the judgment of the trial court.



 Josh R. Morriss, III

 Chief Justice



Date Submitted: June 20, 2007

Date Decided: June 29, 2007


Publish
1. Some of the documents in the trial court's file conflict in identifying the charge against
Landers. Notably, the trial court's judgment erroneously identifies the conviction as being for
intoxication assault, a third-degree felony. See Tex. Penal Code Ann. § 49.07 (Vernon 2003). The
actively pursued count two of the indictment, the oral guilty plea to that count, and the punishment-phase jury charge consistently identify the charge as intoxication manslaughter, a second-degree
felony. See Tex. Penal Code Ann. § 49.08 (Vernon 2003). Given the single jurisdictional
enhancement used, both the sentence range with which the jury was charged and Landers' sentence
are consistent with the second-degree felony of intoxication manslaughter, enhanced with one prior
felony  conviction  to  a  punishment   range  for  a  first-degree  felony.  See  Tex.  Penal  Code
Ann. § 12.42(b) (Vernon Supp. 2006). The trial court's judgment should be modified to describe
intoxication manslaughter as the charge to which Landers pled guilty and for which she was
sentenced.
2. Landers pled guilty to the second-degree felony of intoxication manslaughter and true to a
single felony enhancement, and the jury assessed her punishment within the range for a first-degree
felony. See Tex. Penal Code Ann. § 12.42(d) (Vernon Supp. 2006). The jury assessed Landers'
punishment at ninety-nine years' imprisonment and a fine of $10,000.00. 
3. We realize the current proceeding is criminal in nature. We, however, believe the civil bar's
development of the relevant due-process analysis can provide instruction when such guidance does
not conflict with the criminal bar's jurisprudence.
4. Please see the first footnote in this opinion for an explanation of this modification.