**UNITED STATES of America,**
**Appellee,**

v.

**Flora PEPE and Nicholas Buono,**
**Appellants.**

**No. 296, Docket 24431.**

United States Court of Appeals Second Circuit.

Argued June 6, 7, 1957.

Decided Sept. 12, 1957.

Paul W. Williams, U. S. Atty., for S. D. New York, New York City (Robert Kirtland and John A. Keeffe, Asst. U. S. Attys., New York City, of counsel), for appellee.

Samuel W. Altman, New York City, (and Harry Silver, New York City, on the brief), for defendant-appellant, Flora Pepe.

Dominick A. Fusco, New York City, for defendant-appellant Nicholas Buono.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

Flora Pepe and Nicholas Buono appeal from their conviction by a jury on three counts of an indictment charging them with the possession of narcotics illegally imported, possession of heroin and cocaine without paying the special tax, and conspiracy to sell and possess narcotics, in violation of 21 U.S.C.A. §§ 173, 174, 26 U.S.C.A. §§ 4702(a), 4721, 4722, 4724(c), 7237(a), and 18 U.S.C.A. § 371, and prison sentences of two and five years respectively.

Before trial, Flora Pepe made a timely motion to suppress narcotics and other property seized in Apartment 5-E at 1172 Stratford Avenue in the Bronx while she was there on July 10, 1956. Her appeal challenges the trial judge's denial of this motion before trial, and the admission of the evidence against her at the trial.

Buono, while not complaining of the search, challenges the propriety of his conviction on several grounds: (1) As to the witness Sam Howard called by the government to identify Buono as Lorenzo who rented the apartment, Buono complains of Howard's impeachment by use of his prior grand jury testimony after he had failed to identify Buono. (2) He alleges further that the govern-

ment pressed this issue to the point of prejudice through the testimony of the Assistant United States Attorney regarding what Howard had testified before the grand jury; (3) he contended that questions put to Howard to show his fear as a reason for his alleged recantation were prejudicial. (4) Buono further complains of prejudicial remarks in the government's summation to the jury. (5) Finally, he charges that the Court erred in the questioning of witnesses and in the charge to the jury.

On July 9, 1956 at 7 p. m., Raoul Vitale, who was described as a special employee of the Bureau of Narcotics, placed a telephone call and talked to a woman, "Flora," and a man, "Nicky" or "Nick." This call was overheard by Agent Mendelsohn, who identified the voices as those of Flora Pepe and Nicholas Buono, both of whom he did not meet until later. It was also shown that the receiving telephone was located in Apartment 5-E at 1172 Stratford Avenue in the Bronx and that the subscriber was one "Nicholas Lorenzo" who was never identified. Vitale asked Nick to meet him and a friend at the White Castle hamburger stand at the corner of Soundview Avenue and Bruckner Boulevard to sell narcotics to Vitale's friend. Nick complained that Vitale owed him money for previous purchases but he agreed to a meeting at the hamburger stand at 9 p. m.

At about 9 p. m. a man identified by Agent Matuozzi as Buono, was seen by Matuozzi to leave the apartment with Flora Pepe. He got into a black and white Chevrolet automobile parked nearby, and a few minutes later was seen by Agent Consoli to drive up to the White Castle hamburger stand, and to stop and wave to Vitale who was inside with Consoli. The man drove into the parking lot next to the White Castle within a few feet of Agent Mendelsohn, but, instead of getting out, he stepped on the gas and drove away at high speed according to Mendelsohn. Vitale again phoned, related what had happened, and told Flora Pepe he would call her the next day.

The next day, July 10, Vitale failed to meet the agents as they had planned. Mendelsohn pretending to be Vitale and disguising his voice accordingly, telephoned the number and Flora answered and said Nicky was out. She said she could not leave the apartment to deliver narcotics because she had orders not to leave when there was "stuff" there. She said she expected Nicky to return and suggested that Mendelsohn call again in an hour. Mendelsohn called again at 8 p. m. and when Flora said that Nicky had not yet arrived, he asked her to bring the narcotics to him at any place she suggested. She repeated that she was not supposed to leave when there was any "stuff" there and that he would have to wait for Nick.

After the second call, Agents Matuozzi and Consoli took positions on the fire escape outside Apartment 5-E. Mendelsohn knocked on the door at a prearranged time and called out "Federal Agents." Matuozzi and Consoli then saw Flora Pepe go to a closet and reach for a vanity case on the shelf. She took the vanity case and as she ran toward the window where the agents where observing, she tried to open the case. Consoli then broke the glass of the window, lifted the window, and he and Matuozzi stepped into the apartment. Flora Pepe dropped the case on the floor. It opened and the agents could see that it contained "glassine envelopes containing a white powder." When Consoli identified himself as a narcotics agent, Flora Pepe said, "You can't prove it is mine."

According to the government version of events, Consoli scooped up the narcotics from the floor, placed Flora Pepe under arrest and searched the premises. In the vanity case were nineteen glassine envelopes which contained eighteen ounces of heroin and a glass jar containing twenty-eight capsules of cocaine. In the apartment the agents also found a weighing scale, with two pans and a number of weights, containers of milk

sugar, cardboard cartons of glassine envelopes, three strainers and a sifter, a jar of empty capsules, a box of staples and a stapler, and some rolls of Scotch tape,—in short, paraphernalia which the jury could well conclude were used for the retailing of narcotics.

On August 6, 1956, after indictment on July 23, but before trial, Flora Pepe moved to suppress the narcotics and other materials seized in the apartment on July 10. Regarding her standing to object to the search and seizure, her affidavit stated only that "On July 10, 1956, at about 7:30 p. m. and 8:00 p. m., your petitioner was in premises 1172 Stratford Avenue, Apartment 5-E thereof, located in Borough of Bronx, Country, City and State of New York." Buono did not join in the motion.

Prior to the trial, the trial judge heard testimony on the motion to suppress. He denied the motion on the ground that the search and seizure were reasonable as incidents of the lawful arrest of Flora Pepe; that when the agents saw Flora Pepe attempting to dispose of the contents of the vanity case, which the agents could reasonably conclude contained narcotics in view of the telephone calls of July 9 and 10, they were justified in breaking in and arresting Flora Pepe in view of the "rapidly moving circumstances" which confronted them.

We do not pass upon the question whether breaking into an apartment without a warrant is justified under such circumstances as were here shown as it is clear that Flora Pepe has no standing to object to the search.

■ Flora Pepe's petition alleged only that she was present in the apartment at the time the search was made. It is well settled that one who does not show either the right to possession of the premises searched or a possessory interest in the property seized will not be heard to complain that a search and seizure are illegal. United States v. Messina, 2 Cir., 1929, 36 F.2d 699. Even if it be assumed that Flora Pepe was rightfully in the premises with the consent of the tenant, or even in charge of the business there transacted, she is not a proper objector. Connolly v. Medalie, 2 Cir., 1932, 58 F.2d 629; United States v. Dellaro, 2 Cir., 1938, 99 F.2d 781; Daddio v. United States, 2 Cir., 1942, 125 F.2d 924. United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, is not in point as Jeffers claimed the seized narcotics were his. In McDonald v. United States, 1949, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153, the illegal seizure was suppressed as to the defendant Washington, who was present on the premises at the time of the seizure, only because co-defendant McDonald who leased the premises had successfully objected to the search. We so construed McDonald v. United States in United States v. Chieppa, 2 Cir., 241 F.2d 635, 638, certiorari denied, sub nom. Ivicola v. United States, 1957, 353 U.S. 973, 77 S.Ct. 1057, 1 L.Ed.2d 1136.

■ The recent *per curiam* decision of the Supreme Court in Kremen v. United States, 1957, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876, although somewhat obscure on this issue,[1] does not support Flora Pepe's contention. In that case, none of the four defendants alleged a proprietary interest in the property, and in its brief the government contended that none of the defendants had the requisite standing to raise the issue. But it was undisputed that one of the four co-defendants was the lessee of the property, and she had made a motion to suppress the evidence on the basis of that relationship although she filed no supporting affidavit averring that. Lessee status provides a sufficient interest for the return of illegally seized property and under McDonald v. United States, 335 U.S. at page 456, 69 S.Ct. at page 193, the evidence could not be used against any of her co-defendants.

1. The Court said only, "The majority of the Court are agreed that objections to the validity of the search and seizure were adequately raised and preserved." 353 U.S. at page 347, 77 S.Ct. at page 829.

We come then to Buono's allegations of error. We turn first to the testimony of Sam Howard, who was called by the government in an attempt to identify Buono as the lessee of Apartment 5-E.

█ The principal issue in the trial was whether Buono was the man who had leased the apartment and had made the appointment with Vitale which was never consummated. The government sought to rely on testimony by Howard and Agents Matuozzi, Mendelsohn and Consoli, but at the trial Howard refused to identify Buono. In an effort to impeach this refusal, the government sought to introduce his testimony before the grand jury and when that proved inconclusive, the Assistant United States Attorney who was trying the case put himself on the stand. Both the grand jury testimony and the Assistant United States Attorney's testimony were stricken. The main question before us is whether striking that testimony was enough to guarantee Buono a fair trial, of whether merely allowing the jury to hear it had so prejudicial an effect under all the circumstances of the case that a mistrial should have been ordered.

Howard had worked at the building for twelve years and had been superintendent since January 1, 1956. He identified Flora Pepe as an occupant of the apartment which he said was used by two men and two women. He testified that a man named Nicholas Lorenzo rented the apartment and that this name was on the rent book.

At the trial, Howard refused to identify Buono as the lessee Lorenzo. He denied that he had ever seen Buono or that he had ever identified a photograph, presumably of Buono, as being Lorenzo, the lessee. He was positive he had never seen Buono at 1172 Stratford Avenue.

When it was apparent that Howard had failed to identify Buono as Lorenzo, the government confronted him with his testimony given before the grand jury on July 12, two days after Flora Pepe's arrest, in an attempt to show that he had identified Buono as Lorenzo at that time. Howard was examined and cross-examined at considerable length regarding his grand jury testimony as the eight pages of Howard's grand jury testimony were made available to defense counsel.

From this extended examination of Howard, the jury learned that before the grand jury Howard had been questioned about five photographs in an attempt to identify the male occupants of the apartment. Howard had testified that he had seen a man whose picture he was shown. It also appears that at least one of the five photographs was of Buono. But Howard repeatedly asserted at the trial that he had not identified a photograph of Buono. As the photographs had not been marked or otherwise identified before the grand jury, it soon developed that it was impossible to ascertain which picture Howard had previously identified and whether he had in any way recognized Buono's photograph as that of a man whom he had seen at 1172 Stratford Avenue.

At the conclusion of Howard's examination at the trial the Assistant United States Attorney asked Howard whether, when Howard had previously talked with him and another government representative, he had brought up "the matter of Arnold Shuster?" This reference to the notorious incident of the killing of Arnold Shuster, who several years ago had been shot to death a few days after he had indentified one Willie Sutton who was wanted for bank robbery, was objected to. When the Court remarked, out of the jury's hearing, that the question was whether Howard was presently scared and not what he had said in July, the government withdrew the question. The government counsel then asked Howard "Are you at the present time frightened for your personal security?" but after objection this question was also withdrawn.

After Howard had thus been inconclusively examined for sixty-three pages

of the stenographic record, the Assistant United States Attorney attempted to save the situation by placing himself on the stand. He stated his recollection as to which photographs Howard had before him at the various stages of his grand jury examination. As there were five unmarked and unidentified photographs and several of these had peen placed before the witness at the same time, the testimony of the Assistant United States Attorney could not conclusively establish what had happened. Of course it did oppose to Howard's testimony, in part at least, the sworn word of the government attorney.

An extended colloquy developed from the concern expressed by the trial judge regarding the relevance of Howard's grand jury testimony and the testimony of the Assistant United States Attorney concerning it, at the end of which the defense attorneys moved for the striking out of Howard's grand jury testimony and that of the Assistant United States Attorney. This was granted because, as the judge explained, "the instructions by the court at the end of the trial would [not] enable a jury of laymen to make the nice distinction between the use of the testimony as affirmative proof and the use of testimony simply for determining the credibility of Howard." Finally defense counsel unsuccessfully moved for a mistrial on the ground that the defendants could not receive a fair and impartial trial from that point on. We think a new trial should have been granted.

Without Howard's indentification, the case against Buono was a close one. The indentification by the other witnesses was fleeting at best. Agent Matuozzi had seen a man whom he identified as Buono for two or three minutes when a man left the apartment on July 9, walked downstairs with Flora Pepe, got into a parked car and drove away. He testified the car was a black and white Chevrolet but apparently he did not note the license number as he gave no testimony about the number or any attempt to trace the car.

The same important omission regarding the license number is to be noted in the testimony of both Consoli and Mendelsohn who testified they also saw Buono for a few brief seconds as he drove up to the White Castle, waved at Raoul Vitale, turned into the parking lot and then drove away without stopping, presumably in the same automobile in which he had driven away from 1172 Stratford Avenue.

Nor is the testimony of Agent Mendelsohn that he heard Buono's voice in the very brief talk with Vitale at 7 p. m. on July 9 very convincing as Mendelsohn did not hear Buono talk again until after Buono's arrest two or three days later.

From the testimony of the agents, the one person who could have identified Buono beyond peradventure was the special employee Vitale, who was not produced. Agent Mendelsohn testified at the trial that he had not seen him since July 9. Although in the absence of a request by the defense for the production of Vitale it cannot be said that the failure to produce him was error, see Roviaro v. United States, 1957, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, Vitale's unexplained absence is a significant omission which we cannot ignore in assessing the strength of the government's case to determine whether the errors here committed were prejudicial.

Buono took the stand himself and denied he was ever at Apartment 5-E, that he had ever been in the narcotics business, or that he had had anything to do with any of the events in question. He denied knowing Flora Pepe. Buono called four witnesses to establish that at the times in question on July 9 he was elsewhere. In addition to his sister, his brother-in-law and a young boy who worked for him, the manager of a florist shop supported his alibi that he was in the florist shop at the time when Agent Mendelsohn talked on the phone with the special employee.

It was therefore vital to the government's case that Howard identify Buono as the lessee of the apartment. But at

the trial, Howard refused to do this. He denied that he had done so before the grand jury and the government tried to impeach him. It is this attempt at impeachment which requires reversal.

Had it been established that Howard had at one time definitely identified Buono, if he had then surprised the government by failing to identify Buono it would seem clear that the government would be entitled to impeach Howard. That much is well settled. United States v. Allied Stevedoring Corp., 2 Cir., 241 F.2d 925, 933, certiorari denied 1957, 353 U.S. 983, 77 S.Ct. 1282, 1 L.Ed.2d 1143. Under such circumstances it would be unthinkable that the jury should not have before it the full story of what the witness had said and that it should not be free to decide from the witness' manner where the truth lies. As Judge Learned Hand implied in Allied, although in such cases the jury might consider the prior testimony as establishing facts, the risk is outweighed by the need for testing the witness' story.

But that is not the situation here because the government, due to the nature of Howard's examination before the grand jury and the treatment there of certain photographs, was unable to show that Howard had ever identified Buono and the judge properly struck Howard's grand jury testimony.

But the government went further and implied by questions which were unanswered and later stricken, that Howard feared reprisal and even possible assassination by Buono or his friends if he identified Buono. From what is in the record it was equally likely that he may have feared someone other than Buono.

Moreover, the Assistant United States Attorney threw his own weight into the scales against the defendant when it must have been obvious that such testimony would not mend the inconclusive testimony of Howard before the grand jury. While we do not question the propriety of his motives in attempting to supply what he thought was the necessary foundation for arguing that Howard had in fact identified Buono, we deplore the practice of a government prosecutor so injecting himself into the trial of a case unless doing so is unavoidable. If it appears that he is to be a witness for the government, and obviously there are times when that cannot be avoided, the trial of the case should be entrusted to a colleague.[2] See: United States v. Alu, 2 Cir., 246 F.2d 29.

The almost inevitable effect of all this, when taken together with the somewhat dubious identification by the government agents, was to lead the jury to believe that Howard was not telling what he knew about Buono and had welched on his previous identification for fear of reprisal. The trial judge's conviction that the jury would believe that Howard had previously identified Buono and that it would therefore take the evidence affirmatively and believe that Buono was the lessee of the apartment was certainly warranted. We do not believe that striking the evidence and instructing the jury was sufficient to protect the rights of the defendant Buono. The case was a close one at best and the impression made by this evidence and the unanswered questions was so prejudicial that the motion for a mistrial should have been granted.

Objection is also made to the prosecutor's summation with respect to the alibi witness, George P. Gavaris. There was no basis in the record for the argument by the government that the testimony was "bought, paid for, and delivered." The District Court should have sustained the objection which was promptly and properly made. Where it is clear that there is no evidence in the record to support a charge of this nature, it seems to us that the district judge should sustain the objection and so inform the jury. While it may be said that the jury can give proper weight to such accusations, counsel should not go so far beyond what is in the case. The

2. The government's representatives on this appeal took no part in the trial.

best way of keeping counsel within proper bounds is for the court to make appropriate comment at the time.

As our view of the principal questions raised requires a reversal as to Buono, it is not necessary to touch upon the other matters complained of by Buono.

We affirm as to defendant Flora Pepe, and reverse as to defendant Buono.