J. B. BICKFORD and Max E. Rogers, Co-Agents of the Successors-in-Interest to the Assets for the Magic-Vac Corporation, formerly a corporation of Oklahoma, Plaintiffs-Appellants,

v.

JOHN E. MITCHELL COMPANY, a corporation of Missouri, Defendant-Appellee.

No. 77–1444.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 15, 1978.

Decided March 26, 1979.

542

Jerry J. Dunlap of Dunlap, Codding & McCarthy, Oklahoma City, Okl., for plaintiffs-appellants.

William Bedard of Storey, Armstrong, Steger & Martin, Dallas, Tex. (Burck Bailey of Fellers, Snider, Blankenship & Bailey, Oklahoma City, Okl., on the brief), for defendant-appellee.

Before HOLLOWAY and DOYLE, Circuit Judges, and STANLEY, Senior District Judge *.

STANLEY, Senior District Judge.

This appeal involves the interpretation of patent and royalty rights under a written contract between the plaintiffs-appellants, successors in interest of Magic-Vac Corporation and the defendant-appellee, John E. Mitchell Company.

The plaintiffs alleged that they were entitled to (1) the payment of additional royalties under the contract in the amount of $45,658.23, and (2) the reconveyance of certain patent rights and the Magic-Vac trademark which had been assigned to the Mitchell Company under the contract. The court, sitting without a jury, awarded plaintiffs $8,639.55 in additional royalties; determined that plaintiffs were not entitled to reconveyance of the patent rights, and that the trademark had reverted to plaintiffs on Mitchell's termination of the contract. The court also denied plaintiffs' claim for attorney's fees.

The background facts will be set out in some detail.

F. E. Farley, one of the plaintiffs in this action, was the president and negotiator for Magic-Vac Corporation at the time the contract of sale was entered into. Magic-Vac was then manufacturing central unit vacuuming systems for home and professional use. The company was in some financial difficulty and these difficulties led to the sale of the assets of Magic-Vac to the Mitchell Company which also was engaged in the manufacture of vacuum cleaning units.

By the terms of the contract of sale the Magic-Vac stockholders were to be paid a five percent royalty on "each Magic-Vac cleaner and component parts sold by Mitchell" and "repair and replacement parts".

At the same time that the corporation was sold, Farley signed on his own behalf another contract with the Mitchell Company. This was a personal employment contract whereby Farley was to receive $500 per month minimum salary plus a one percent commission on all items sold by him. Farley therefore received royalties as a 39 percent stockholder of Magic-Vac plus a one percent commission on sales.

Mitchell Company computed the royalties and Farley's commission on the same gross sales figure from April 1962 until November 1963. It then became apparent to the Mitchell Company officers that the items on which the royalties were to be paid were not coextensive with the items on which Farley's commission was based. The discrepancy arose because the Magic-Vac division of the Mitchell Company also manufactured and sold Handy-Wash and Handy-Mart, neither being a product acquired from Magic-Vac. Handy-Wash was a car washing unit installed in service stations. Handy-Mart was a large commercial refrigerator unit used for storage of convenience items such as sandwiches and beverages.

In an effort to avoid burdensome record keeping necessary to keep the two sales totals separate, Mitchell Company simply took 85 percent of the gross sales of the Magic-Vac division and paid the 5 percent royalty based on the resulting amount. This figure was arrived at by examining the ratio of "royalty sales" to Farley's total sales over a period of several months. It was determined by the Mitchell Company that 85 percent of the total sales was a fair and accurate percentage on which to base the royalty payments.

The Mitchell Company implemented this method and used it from November 1963 until October 1970. From this latter date

* Of the District of Kansas, sitting by designation.

until November 1972, the date the contract was terminated by Mitchell, the royalty was based on a sales figure which additionally excluded plastic pipe, flexible hoses and attachments such as brushes and crevice tools.

The trial court sustained the use of the 85 percent rule, rejecting plaintiffs' argument that they were entitled to a royalty on all sales made by the Magic-Vac division. The court based its determination on its interpretation of the 1962 contract—that royalties were to be paid on "Magic-Vac cleaner and component parts" and "repair and replacement parts", but not on Handy-Wash and Handy-Mart. The trial court further found that the Mitchell Company acted in complete good faith in implementing the 85 percent formula, and that plaintiffs had consented to its use by accepting the benefits of the formula since 1963.

However, the second reduction in the royalty base, the exclusion of flexible hoses, attachment tools, and plastic pipe, was determined to be unfair and these items were reinstated. The reinstatement of these items formed the basis for the $8,639.55 royalty payment awarded plaintiffs and the judgment in their favor has not been appealed by Mitchell.

The deposition of Farley was offered in evidence by the plaintiffs at the trial and was admitted after representation by counsel that he was then physically unable to appear. After judgment was entered and after the findings and conclusions were filed the plaintiffs moved for a new trial or alternatively to re-open the case to permit Farley to testify. Denial of the motion is assigned as error.

■ Rule 59(a)(2), Fed.R.Civ.P., provides in part that

> On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

Motions of this nature are addressed to the sound discretion of the trial court and a denial will be disturbed only when clearly erroneous. *Kizziar v. Dollar*, 268 F.2d 914 (10th Cir. 1959), *cert. denied*, 361 U.S. 914, 80 S.Ct. 258, 4 L.Ed.2d 184.

■ Plaintiffs did not move for a continuance or request leave to present additional evidence by further deposing Farley. In light of the plaintiffs' failure to utilize these available alternatives, the court was well within its discretion in denying plaintiffs' motions. See *Muhammad Temple of Islam v. City of Shreveport, La.*, 387 F.Supp. 1129 (W.D.La.1974), *aff'd*, 517 F.2d 922 (5th Cir. 1975).

The second issue raised is whether the trial court committed reversible error in holding that the two patent applications conveyed to Mitchell were of no value and that Mitchell was therefore not obligated to reconvey these to the plaintiffs. By the terms of the contract two patent applications were assigned to Mitchell—patent application No. 48,663 in the name of Rex S. Hayes, filed October 19, 1960, and patent application No. 120,873 filed June 15, 1961 in the name of Rex S. Hayes. Plaintiffs offered evidence in the form of testimony by Mr. Bickford, a C.P.A. and one of the plaintiffs in this action, that the patents were worth approximately $180,000. This figure was based on the average of two computations made by Mr. Bickford. The first involved computations of the royalties received by plaintiffs over the previous five years which was projected over the remaining life of the patent, amounting to $200,-000. The second figure offered by Mr. Bickford was $160,000 which resulted from the method of valuation used by the IRS. According to Mr. Bickford's testimony this method involved the use of the life of the patent on which royalties were paid, 1966 through 1972, which was then discounted by 17 percent and projected over the remaining life of the patent.

In an effort to rebut this testimony concerning the value of the patents in question, Mitchell requested that one of its attorneys, Mr. Edmund C. Rogers, who had not yet participated in the trial, be excused as counsel in the case and called as an expert

witness. Mr. Rogers' testimony was allowed over plaintiffs' objections, and this is also assigned as error.

■■■ Rule 601 of the Federal Rules of Evidence provides that every person is competent to be a witness except as otherwise provided in the rules. Attorneys appearing as witnesses on behalf of their clients have been required to withdraw as counsel to avoid ethical improprieties, as was done in this case. The question of competency, however, is one within the discretion of the trial court and will not be disturbed on appeal unless clearly erroneous. *United States v. Brown*, 417 F.2d 1068 (5th Cir. 1969) *cert. denied*, 397 U.S. 998, 90 S.Ct. 1140, 25 L.Ed.2d 407. We find no error in permitting Mr. Rogers to testify in light of the facts that (1) he had not previously participated in the trial; (2) he withdrew from the case before he was allowed to take the witness stand; and (3) the trial was to the court and not to a jury.

■ Mr. Rogers testified that the patent application numbered 48,663 was filed in 1960 for Magic-Vac Corporation. A "continuation-in-part" to this application was filed some time in 1961. This application, numbered 120,873, together with number 48,663 were the patent applications conveyed by the 1962 contract between Magic-Vac and Mitchell. Mr. Rogers testified that his firm had taken over prosecution of this patent application after it had been filed; that it had been rejected by the Patent Office several times; and that each time it was rejected it was redrafted more narrowly in the hope that it might be accepted by the Patent Office. Patent application number 48,663 was abandoned in favor of number 120,873. This latter application was finally rejected by the Patent Office in November 1964.

Six months after the 1962 contract had been entered into, a third patent application was drawn up in the names of Rex. S. Hayes and F. E. Farley. According to Mr. Rogers, patent number 3,240,000 issued directly to the Mitchell Company and was never owned by Magic-Vac. He testified that the principles covered by this patent were not involved in the two patent applications assigned to Mitchell by Magic-Vac in 1962.

Plaintiffs have appealed on the basis that the findings of fact by the trial court were clearly erroneous under Rule 52(a), Fed.R. Civ.P. They carry a heavy burden, especially in light of the fact that the findings by the trial court were based primarily on oral testimony and the trial court had the opportunity to view the demeanor and pass upon the credibility of the witnesses. *United States v. Denver & R.G.W.R.R.*, 547 F.2d 1101 (10th Cir. 1977); *Snodgrass v. Nelson*, 503 F.2d 94 (8th Cir. 1974).

The court below made the following findings regarding the patent rights at issue.

15. Application Serial No. 48,663 became abandoned by the attorneys for plaintiffs' predecessor about the time of The Contract, because its substance was included within the later application No. 120,873. Despite severe reduction of the coverage claimed, in the effort to obtain allowance, Serial No. 120,873 was finally rejected by the United States Patent Office as unpatentable, a patent was refused thereon, and the application was abandoned on November 13, 1964.

16. While The Contract expressed its intention as to enable defendant to enjoy rights "to the exclusion of all others," and to give defendant "the exclusive rights and conveyance of ownership as set forth in Paragraphs 1 and 2 of this agreement," there never were any such exclusive rights obtained in either of the patent applications mentioned, and all chance of exclusive rights therein disappeared when Application No. 120,873 was abandoned. Hence, it is found that thereafter, Application Nos. 48,663 and 120,873 were worthless. The fact that plaintiffs' predecessor was in such dire financial condition, in effect "broke," at the time The Contract was entered into is further evidence that Nos. 48,663 and 120,873 were of no value.

17. After The Contract was entered into, a new application for patent was filed November 3, 1963, in the joint

names of Rex S. Hayes and F. E. Farley for an improvement over the alleged invention of application No. 120,873. It is not an "invention of Rex S. Hayes" as defined by The Contract. It finally issued into Patent No. 3,240,000 on March 14, 1966.

18. It is found that Patent No. 3,240,000 was never owned by plaintiffs' predecessor, its application having been assigned directly to the Mitchell Company in October, 1962, by Hayes and Farley and not by plaintiffs' predecessor. It issued to defendant.

19. Patent No. 3,240,000 differs structurally from the disclosure of Serial No. 120,873 in that it has a Fram-Type Cylindrical Filter located above a so-called drop-spacer-separator (numbered "40" in the patent) and the drop-spacer-separator in turn is located above the cone portion of the cyclone separator. This combination and sequential arrangement is not present in the earlier Hayes applications.

29. A Primary factor in determining damage to plaintiffs from failure to assign the patent is whether any other potential user of the patents or either of them existed. There is no adequate proof, that there was anyone who would use them, or either of them, or the trademark Magic-Vac, or what payment, if any, would have been made for them, or any of them.

A careful examination of the record reveals that the findings of fact made by the trial court are supported by the evidence, and that the judgment on this issue is fully supported by the facts. *Filger v. Plax Corp.*, 261 F.2d 369 (6th Cir. 1958).

The last assignment of error is the trial court's denial of plaintiffs' motion for attorney's fees, made pursuant to 12 Okl.Stat. § 936, which provides:

In any civil action to recover on an open account, a statement of account, account stated, note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, unless otherwise provided by law or the contract which is the subject of the action, the prevailing party shall be allowed a reasonable attorney fee to be set by the Court, to be taxed and collected as costs.

This court has approved the allowance of attorney's fees under the Oklahoma statute when the claim falls within one of the categories enumerated in section 936. See e. g., *Kilpatrick Bros., Inc., v. International Bus. Mach. Corp.*, 464 F.2d 1080 (10th Cir. 1972); *Pecan & Agricultural Equip., Inc. v. Lockwood Corp.*, Nos. 76–1965 and 76–1966 (10th Cir. 1978).

The trial court held that the plaintiffs' claims were based upon alleged deficiencies in the payment of royalties and alleged failure to reconvey patent and trademark rights and thus did not fall within the statutory framework of the Oklahoma statute authorizing the allowance of attorney's fees.

■ The allowance of attorney's fees in a diversity case, as this is, is a question of state law. *Pecan & Agricultural Equip., Inc. v. Lockwood Corp., supra.* Determination of matters of state law by the trial court sitting in the state will not be disturbed on appeal unless clearly erroneous. *Manufacturer's Nat'l. Bank of Detroit v. Hartmeister*, 411 F.2d 173 (10th Cir. 1969). Based upon our examination of the entire record, we are in agreement with the trial court's resolution of the dispute and its holding that the plaintiffs' claims were not, as urged by the plaintiffs, actions to recover on an open account or on a contract relating to the purchase or sale of goods, wares, or merchandise, but were predicated on claims of alleged deficiencies in the payment of royalties and alleged failure to reconvey patent and trademark rights.

We find no plain error either in the findings of fact or the conclusions of law. The judgment is affirmed.