**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Ted JOHNSTON, Defendant-Appellee.**

**No. 81–1300.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1981.

Decided Nov. 17, 1981.

Rehearing and Rehearing En Banc Granted and Opinion Vacated March 23, 1982.

David C. Bohan, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellant.

Marvin Bloom, Chicago, Ill., for defendant-appellee.

Before WOOD and CUDAHY, Circuit Judges, and DUMBAULD,* Senior District Judge.

CUDAHY, Circuit Judge.

In this appeal we are asked to decide whether the district court erred when it refused to permit an Assistant United States Attorney to testify in a suppression hearing preceding a jury trial in which he participated as a government prosecutor. We affirm.

## I. FACTS

On May 21, 1980, defendant Ted Johnston and eleven co-defendants were indicted on thirteen counts of violating various provisions of the Comprehensive Drug Abuse Prevention and Control Act.[1] Count Two of the indictment alleged that defendant conspired with co-defendant Andrew Theodorou and others to import marijuana illegally with intent to distribute it. Counts Four and Seven charged that on two occasions in 1976, defendant and several co-defendants had possessed a large quantity of marijuana with intent to distribute it.[2]

On August 8, 1980, defendant moved to dismiss the indictment or, alternatively, to suppress certain statements he had made to Drug Enforcement Administration ("DEA")

agents in February, 1978. As grounds for his motion, defendant alleged that the statements had been made subject to a promise by DEA agents that he would not be prosecuted on any charge related to the subject matter of his statements.

An evidentiary hearing to consider defendant's motion was held on February 19 and 20, 1981. At the outset of the hearing, Assistant United States Attorney Joseph Hosteny informed the district court that, because he anticipated some possibility of being called as a witness in the hearing, he was withdrawing from further participation in the handling of defendant's suppression motion. He left the courtroom and was thereafter absent during the suppression hearing. Hosteny did participate, however, in the jury trial that followed.

Five witnesses testified at the suppression hearing. From their testimony, certain facts appear to be undisputed. As early as 1977, defendant was the subject of an investigation by the New Mexico State Police into suspected smuggling of Mexican marijuana into the United States. At the same time, the DEA was investigating defendant's suspected involvement in a large-scale drug smuggling operation centered in Chicago. On February 13, 1976, defendant was arrested in San Francisco by local authorities and charged with possession of marijuana. Upon being informed of the arrest, Detective John Dunlap of the New Mexico State Police and Sergeant Richard Moore of the Metropolitan Narcotics Agency (New Mexico) traveled to San Francisco to interview defendant. The two met with defendant the next day, at which time defendant expressed a preference for talking with federal investigators.[3] Acting in response to this desire, Moore contacted the DEA in

---

* The Honorable Edward Dumbauld, Senior District Judge for the Western District of Pennsylvania, is sitting by designation.

1. 21 U.S.C. §§ 801–966 (1976).

2. Theodorou and the other non-fugitive defendants pleaded guilty and have been sentenced.

3. No clear reason for defendant's reluctance to talk to the New Mexico police emerged from

the suppression hearing. Dunlap testified that defendant feared that the state officials would leak any information he provided them to his former associates. Tr. 36. Defendant stated during the hearing that when the state officials questioned him about Andrew Theodorou, he told them he would rather speak to DEA agents about a "deal." Tr. 74.

Chicago, and agents Timothy Sack and Lance Mrock were dispatched to San Francisco on February 15, 1978 to meet with the defendant.

Sack and Mrock questioned defendant on February 15 and 16, 1978. Also present during these interviews were Dunlap, Moore and Sergeant Gregory Corrales of the San Francisco Police Department.[4] After reaching some agreement with the DEA agents regarding the conditions under which he would talk, defendant proceeded to relate to the agents detailed information concerning his involvement in the smuggling ring headed by Theodorou. Defendant was subsequently released from custody and the San Francisco charges against him were eventually dropped.[5]

In support of his motion to suppress, defendant called Dunlap as a witness. Dunlap testified that it was his impression that defendant had been promised immunity from prosecution in exchange for information about the Theodorou smuggling operations. He also stated that during the lengthy interrogation of defendant, the DEA agents made repeated assurances that the information given to them by defendant would not "come back" on him or "put [him] in jail."[6]

Johnston also testified in support of his motion. He stated that he agreed to talk with the DEA agents if they would make three promises: (1) that the charges pending in San Francisco against defendant and his co-defendants would be dropped; (2) that he would not be arrested on charges

relating to the information he was about to give them; and (3) that he would not be asked to testify or collaborate on related matters. According to defendant, the DEA agents told him that they would have to check on his requests, they left the room for between 15 and 20 minutes, and returned to tell him, "Okay. We got you a deal."[7] Defendant testified that only after Moore reassured him that he could trust the agents did he begin to describe his involvement in the Theodorou smuggling ring.

Johnston further stated on direct examination that shortly after his indictment in Chicago in 1980, he called Assistant United States Attorney Hosteny to complain that the government had broken its promise not to prosecute defendant. Defendant testified that Hosteny denied that any such promise had been made and that Hosteny was very angry with defendant for refusing to come to Chicago to testify. The government attempted to cross-examine defendant regarding the telephone conversation with Hosteny. The district court interrupted the examination, however, telling the government not to call Hosteny as a witness against the defendant. After further discussion, during which the district court expressed its desire not to resolve "the word of a lawyer against a defendant in a criminal case,"[8] the government ceased its cross-examination of defendant.

The government called three witnesses to support its contention that defendant had never been promised immunity from prose-

---

**4.** Although there is basic agreement as to the identity of the persons who attended the interviews on February 15 and 16, there is considerable difference of opinion whether all of them witnessed the entire interview. The conflict is most pronounced with respect to two witnesses at the suppression hearing, Dunlap and Corrales. Defendant testified that Dunlap was present for the entire interview, Tr. 75–76, while Dunlap said he was present for only 90% of the interview. Tr. 51–52. Corrales' assertion that he never left the room during the interview, Tr. 220; was disputed by both Dunlap and Sack, who insisted that Corrales was not in the room for the entire period. Tr. 51, 156.

**5.** Corrales testified that the charges were dismissed in deference to an ongoing New Mexico investigation that would have been jeopardized had defendant's case proceeded to trial. Tr. 224–25, 227–28.

**6.** Tr. 43.

**7.** Tr. 80. In addition, defendant testified that he was offered, and refused, $10,000 by Sack if he would agree to sign a statement or to testify. Tr. 87–88. Sack and Mrock both denied that such an offer was made, Tr. 130, 180, although Dunlap stated that a reward for defendant's cooperation in the Theodorou case was mentioned during the interview. Tr. 46–47.

**8.** Tr. 122.

cution. DEA agent Sack testified that he specifically told defendant he would remain "accountable" for his actions,[9] and promised only to assist defendant with respect to the pending San Francisco charges and to communicate defendant's cooperation to the United States Attorney in Chicago. Mrock and Corrales each testified that the only promise made to defendant related to DEA assistance on the San Francisco charges, and neither Mrock nor Corrales recalled any promise to convey defendant's cooperation to the United States Attorney.

After hearing the evidence, the district court denied defendant's motion to dismiss the indictment but granted the motion to suppress his statements to the DEA agents. Finding it implausible that Johnston would be willing to inculpate himself in a massive drug smuggling operation in violation of federal law in return only for a promise of assistance on a relatively minor possession offense,[10] the district court concluded that the statements had been induced by a promise that defendant would not be prosecuted. The government perfected its appeal from this ruling pursuant to 18 U.S.C. § 3731 (1976).

## II. DISCUSSION

The advocate-witness rule, which articulates the professional impropriety of assuming the dual role of advocate and witness in a single proceeding, has deep roots in American law. Today, the rule is reflected in the ABA Code of Professional Responsibility, which states as an "ethical consideration:"

> The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively.[11]

The Code's Disciplinary Rules have codified this ethical consideration. They prohibit an attorney from accepting employment in contemplated or pending litigation when it is obvious that he will be called as a witness. If the need for his testimony becomes apparent after the attorney has undertaken employment in the case, he must withdraw from the conduct of the trial. These requirements do not apply, however, in exceptional circumstances enumerated in the Disciplinary Rules: where the testimony will relate solely to an uncontested or formal matter and there is no reason to believe that substantial evidence will be offered in opposition to the testimony, and where refusal to testify would work a "substantial hardship" on the client.[12] These ethical rules apply to all lawyers, including government prosecutors.[13]

The federal courts share the legal profession's disapproval of the dual role of advocate and witness,[14] and have universally

---

**9.** Tr. 155.

**10.** The district court accorded little significance to the DEA agents' promise of assistance on the San Francisco charges, noting that Corrales had testified that those charges were dropped for reasons unrelated to DEA intercession on defendant's behalf. *See supra* note 5.

**11.** American Bar Association, Code of Professional Responsibility EC 5–9 (1978).

**12.** *Id.* DR 5–101(B), 5–102. The courts have generally given the "substantial hardship" exception a very narrow reading. *See* Note, *The Advocate-Witness Rule: If Z Then X, But Why?*, 52 N.Y.U.L.Rev. 1365, 1375–79 (1977).

**13.** *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974); *Gajewski v. U.S.*, 321 F.2d 261, 268 (8th Cir. 1963), *cert. denied*, 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); *United States v. Alu*, 246 F.2d 29, 34 (2d Cir. 1957).

*See also* American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function (Approved Draft 1971), § 3.1(f), which provides:

> The prosecutor should avoid interviewing a prospective witness except in the presence of a third person unless the prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony.

**14.** *See, e. g., United States v. Birdman*, 602 F.2d 547, 551–55 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980); *Phillips v. Wyrick*, 558 F.2d 489, 497 n.3 (8th Cir. 1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978); *United States v. Schwartzbaum*, 527 F.2d 249,

condemned the practice of a government prosecutor's testifying at a trial in which he is participating.[15] Such testimony is permitted only in extraordinary circumstances and for compelling reasons.[16] Where the prosecutor's appearance is unavoidable, however, numerous courts have insisted that the prosecutor withdraw from further involvement in the case.[17]

In *United States v. Birdman*,[18] the Third Circuit recently examined the case law and identified four policies said to be served by the advocate-witness rule. First, the rule eliminates the risk that a testifying prosecutor will not be a fully objective witness given his position as an advocate for the government. Second, there is a fear that the prestige or prominence of a government prosecutor's office will artificially enhance his credibility as a witness.[19] Third, the performance of dual roles by a prosecutor might create confusion on the part of the trier of fact as to whether the prosecutor is speaking in the capacity of an advocate or of a witness, thus raising the possibility of the trier according testimonial credit to the prosecutor's closing argument. Fourth, and most important, the rule reflects a broader concern for public confidence in the administration of justice, and implements the maxim that "justice must satisfy the appearance of justice."[20] This concern is especially significant where the testifying attorney represents the prosecuting arm of the federal government.

■ The government contends that the rule prohibiting prosecutors from appearing

---

253 (2d Cir. 1975), *cert. denied*, 424 U.S. 942, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976); *Gajewski v. U.S.*, 321 F.2d 261, 268 (8th Cir. 1963), *cert. denied*, 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); *United States v. Clancy*, 276 F.2d 617, 636 (7th Cir. 1960), *rev'd on other grounds*, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); *United States v. Alu*, 246 F.2d 29, 34 (2d Cir. 1957); *Christensen v. U.S.*, 90 F.2d 152 (7th Cir. 1937).

15. *See, e. g., United States v. Trapnell*, 638 F.2d 1016, 1025 (7th Cir. 1980); *Phillips v. Wyrick*, 558 F.2d 489, 497 n.3 (8th Cir. 1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978); *United States v. Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974); *Gajewski v. U.S.*, 321 F.2d 261, 268 (8th Cir. 1963), *cert. denied*, 375 U.S. 968, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964); *United States v. Alu*, 246 F.2d 29, 34 (2d Cir. 1957); *United States v. Pepe*, 247 F.2d 838, 844 (2d Cir. 1957).

16. *United States v. Trapnell*, 638 F.2d 1016, 1025 (7th Cir. 1980); *United States v. Armedo-Sarmiento*, 545 F.2d 785, 793 (2d Cir. 1976), *cert. denied*, 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977); *United States v. Schwartzbaum*, 527 F.2d 249, 253 (2d Cir. 1975), *cert. denied*, 424 U.S. 942, 96 S.Ct. 1410, 47 L.Ed.2d 348 (1976); *United States v. Torres*, 503 F.2d 1120, 1126 (2d Cir. 1974); *Backo v. Local 281, United Bhd. of Carpenters & Joiners*, 438 F.2d 176, 179 (2d Cir. 1970), *cert. denied*, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971); *United States v. Alu*, 246 F.2d 29, 34 (2d Cir. 1957); *United States v. Pepe*, 247 F.2d 838, 844 (2d Cir. 1957).

17. *See, e. g., Bickford v. John E. Mitchell Co.*, 595 F.2d 540, 544 (10th Cir. 1979); *Newman v. Sigler*, 421 F.2d 1377, 1378–79 (8th Cir.), *cert. denied*, 399 U.S. 935, 90 S.Ct. 2267, 26 L.Ed.2d 808 (1970); *United States v. Clancy*, 276 F.2d 617, 636 (7th Cir. 1960), *rev'd on other grounds*, 365 U.S. 312, 81 S.Ct. 645, 5 L.Ed.2d 574 (1961); *United States v. Pepe*, 247 F.2d 838, 844 (2d Cir. 1957); *Christensen v. U. S.*, 90 F.2d 152 (7th Cir. 1937). *Cf. United States v. Fiorillo*, 376 F.2d 180, 185 (2d Cir. 1967) (withdrawal of testifying defense counsel neither permitted nor required absent prejudice to the defendant).

18. 602 F.2d 547, 553–55 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980).

19. In *United States v. Cerone*, 452 F.2d 274, 288 (7th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972), however, this court was unpersuaded by the so-called "awesome-office" theory. We held that the mere fact that a witness holds an office of public trust should not disqualify him as a witness *so long as he does not otherwise participate in the trial*. *Accord United States v. Dellinger*, 472 F.2d 340, 409 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *United States v. Callanan*, 450 F.2d 145, 150 (4th Cir. 1971).

20. *United States v. Birdman*, 602 F.2d 547, 554 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980), 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980) (quoting *Offutt v. U. S.*, 348 U.S. 11, 14, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954)).

as witnesses has no application to proceedings tried to a judge. It points out that all of the cases relied upon by defendant that applied the advocate-witness rule involved prosecutors who sought to give testimony before a grand or petit jury. In addition, the government argues that, because the district judge was trier of fact in the suppression hearing and a jury performed that function at trial, these were in essence *separate* proceedings for purposes of the advocate-witness rule; therefore, had Assistant United States Attorney Hosteny been permitted to testify at the suppression hearing, he would not have assumed the dual role of advocate and witness in a *single* proceeding. We disagree strenuously with the suggestion that the policies underlying the advocate-witness rule, particularly the "public confidence" rationale, are simply inapplicable outside the context of jury proceedings. Moreover, we think it distorts reality to regard a suppression hearing and subsequent jury trial as separate proceedings for purposes of this rule when the same judge presides over both.

We do not disagree, however, that some of the policy grounds said to support the advocate-witness rule, at least in some cases, may be less persuasive in the context of a pretrial hearing tried to a judge than these policies are in the setting of a jury trial or grand jury proceeding. For example, a judge may be better equipped than a jury to take account of a witness-prosecutor's adversarial role in weighing the objectivity of his testimony. A judge may also be less apt than a jury to confuse the roles of witness and prosecutor. Finally, to the extent that the "awesome-office" rationale remains a viable one after this court's decision in *United States v. Cerone*,[21] we think that in certain circumstances a judge may

be less swayed than a jury by the prominence or prestige of a government prosecutor in assessing the credibility of his testimony. But we believe strongly that the central justification for the rule—the maintenance of public confidence in the ultimate fairness of judicial proceedings—is no less applicable to proceedings before a judge than it is to those before a jury.

In the instant case, had the district court allowed Hosteny's testimony, it would have been faced with the troublesome prospect of deciding which of two witnesses—defendant Johnston or Hosteny—was telling the truth about the phone conversation.[22] We might agree that a judge in this position could make such a determination without prejudice to the defendant and without contravening the advocate-witness rule, so long as the testifying prosecutor did not otherwise participate in the case. Our decision in *Cerone* constrains us to concede this much. Our concern, however, is with the danger of prejudice to the defendant and the appearance of unfairness that would result if the district court resolved the testimonial conflict between the two witnesses and then presided over a trial pitting these same protagonists as litigants.[23] Whatever the district court's ruling on the suppression motion, it inevitably would have had to find one of the two witnesses to be less than credible. The court's subsequent rulings during trial could, therefore, create the appearance, even if they did not reflect the reality, of favoring the cause of the party-witness whose testimony the court had earlier believed. Particularly in criminal trials, where the full weight of the government is brought to bear against a solitary individual, even the appearance of such bias could impair public confidence in the fairness of the judicial process. We believe

---

**21.** 452 F.2d 274, 288 (7th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972). *See supra* note 19.

**22.** Defendant testified that he called Hosteny to complain that the government had violated its promise of immunity. Hosteny, in a memorandum written shortly after the telephone call, wrote that a promise of immunity was not mentioned by defendant. Sealed Exhibit # 1.

Thus, it appears that had Hosteny been allowed to testify, he would have disputed defendant's assertion that a promise of immunity was discussed.

**23.** Although Hosteny withdrew from any participation in the suppression hearing (other than as witness), he participated fully in the jury trial that followed.

that this danger is precisely what the advocate-witness rule was designed to prevent, and it is a danger that the district court in the instant case appears to have recognized.[24]

For the same reasons, we are not persuaded by the government's claim that the suppression hearing and subsequent jury trial were in reality separate proceedings for purposes of the advocate-witness rule. The impropriety of allowing Hosteny's testimony stemmed from the possibility that the district judge, in presiding over the trial, might favor or appear to favor the party or advocate whose testimony he had earlier credited. There would be ample opportunity in such a case for the district judge to manifest, or appear to manifest, bias or favoritism in the procedural conduct of the trial and in ruling on objections and motions, even though the function of determining guilt would be entrusted to the jury. Hence, when Hosteny sought to appear before the same judge in the same case first as a witness and later as an advocate, he was attempting to assume dual roles in a *single* proceeding, in contravention of the advocate-witness rule.

Thus, when the district court was faced with the decision whether to accept or refuse Hosteny's testimony, the only alternatives presented to it, the court quite properly chose to exclude the testimony. In light of the professionally recognized impropriety of assuming dual roles in litigation and the potential for unfairness toward defendant, we can find no abuse of discretion in the district court's actions.

■ The government argues on appeal, however, that the district judge should have considered alternatives to exclusion of Hosteny's testimony. It now suggests, for the first time, that the district court could have submitted the suppression motion to a magistrate to hear the conflicting testimony and recommend a finding of fact,[25] or it could have ruled on the suppression motion and then reassigned the case to another judge for trial. Either of these procedures would have avoided a situation in which a district judge presides over a trial involving (as it must) a defendant and a government prosecutor after having earlier taken during a pretrial hearing either the defendant's or the prosecutor's word for important disputed facts. We also note that a third alternative, opposed by the government on grounds of prosecutorial efficiency, would have achieved the same result: withdrawal by the testifying prosecutor from further participation in either the suppression hearing or the jury trial that followed.[26]

We agree with the government that any of these alternative courses of action would have removed the central objection to the introduction of Hosteny's testimony. We believe, however, that the burden of suggesting these alternatives to the district

---

24. In summarizing his objections to Hosteny's testimony, the district judge observed:

> For these defendants on trial, in my judgment, it would contaminate the sense of fairness of this trial for me to be asked to let a prosecutor I know very well and for whom I have the greatest respect, for me to be asked to have him appear one moment as a prosecutor and then another moment as a witness. Tr. 283–84.

25. This procedure is authorized by 28 U.S.C. § 636(b)(1)(B) (1976), which provides that a district judge may designate a magistrate to conduct evidentiary hearings and to submit to the district judge proposed findings of fact and recommendations for the disposition of the motion. In *United States v. Raddatz,* 447 U.S. 667, 680, 100 S.Ct. 2406, 2414, 65 L.Ed.2d 424 (1980), the Supreme Court ruled that the district court employing this procedure is not required to rehear the testimony on which the magistrate based his findings and recommendation in order to make an independent determination of credibility.

26. Because the option of complete withdrawal from the case, like the other alternatives now advocated by the government, was not presented to the district court nor raised by it *sua sponte,* we have no occasion to decide whether, on these facts, the district court in the sound exercise of its discretion could have conditioned the admission of Hosteny's testimony upon his withdrawal from further participation in the hearing and the trial. We thus express no opinion on the government's contention that considerations of prosecutorial efficiency may in certain situations justify the admission of a prosecutor's testimony without requiring his withdrawal from the case.

court was on the government, the proponent of the evidence. The government made no attempt in the instant case to inform the district court that there existed procedures that would have removed the objections to Hosteny's testimony. We are very reluctant, therefore, to upset the district court's ruling on the basis of the existence of alternatives never presented to it. Moreover, we reject the government's contention that the district court absolutely foreclosed all opportunity to suggest such alternatives. Our examination of the record persuades us that although the district judge vigorously condemned the idea of calling the prosecutor to testify, he did not prevent the government from suggesting ways to alleviate the "predicament" that understandably disturbed him.[27]

Basically, it seems to us that the government knew at least as early as the beginning of the suppression hearing (when Hosteny withdrew) that Hosteny would likely want to testify about his telephone conversation with defendant. The government should have known that it faced a delicate problem. By simply presenting Hosteny, with his known impediments, as a witness in rebuttal of defendant (no alternatives being suggested or discussed), the government assumed the risk that the district judge would react as he did and simply reject without qualification the proffer of testimony. The government might have proposed contingency arrangements as soon as it was known that defendant would testify about the content of a telephone conversation with Hosteny (and this prospect was known at the time of the opening argument). The suggestion of such arrangements might have averted the situation presented here where the trial judge was, in effect, backed into a corner in which he felt, in the exercise of his discretion, he had no choice, given his view of the ethical considerations, but to reject unequivocally Hosteny's participation as a witness.[28]

Finally, we cannot say that the government demonstrated extraordinary circumstances or compelling reasons supporting admission of Hosteny's testimony.[29] Although the matters discussed during the telephone conversation between defendant and Hosteny were hotly disputed, the conversation took place nearly two years after the alleged promise of immunity was made, and five witnesses, including defendant, gave eyewitness testimony regarding the interviews at which defendant claims he was promised immunity. These circumstances distinguish the instant case from those in which prosecutors have been allowed to testify about uncontroversial matters within their sole knowledge.[30] Although we are not prepared to conclude, as defendant urges us to do, that Hosteny's testimony lacked any evidentiary value at all, we cannot say that the circumstances were so extraordinary as to warrant a departure from the settled rule prohibiting testimony by a government prosecutor.[31]

27. When it became apparent that the government might call Hosteny as a witness, the district judge immediately pronounced his intention not to allow the testimony. The government asked to be heard on the matter, to which the district judge responded, "I don't want to hear you at all. I have told you what I am not going to do." Tr. 122. Discussion then followed regarding the impropriety of the proffered testimony, and concluded with the district judge telling the government, "And, by the way, I can tell you how to deal with this matter if you don't know how." Tr. 124. At no time during this exchange did the government offer any alternatives to refusing the evidence. We cannot conclude from this record that had the government apprised the court of options that would have permitted the testimony without raising ethical objections, the district judge would nonetheless have excluded the testimony.

28. The dissent does not address the alternatives suggested by the government or how they might have been managed.

29. *See* text and note at *supra* note 16.

30. *United States v. Trapnell,* 638 F.2d 1016, 1025 (7th Cir. 1980); *Backo v. Local 281, United Bhd. of Carpenters & Joiners,* 438 F.2d 176, 179 (2d Cir. 1970), *cert. denied,* 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971).

31. The district court, in an apparent attempt to negate the effect of defendant's testimony concerning the phone conversation with Hosteny, declared that in ruling on the suppression mo-

■ For the reasons stated herein, we hold that the district court did not abuse its discretion in refusing to permit the testimony by the Assistant United States Attorney. Accordingly, the decision below is affirmed.

AFFIRMED.

WOOD, Circuit Judge, dissenting.

Although I wholeheartedly agree with the general observations of the majority concerning the advocate witness rule, I respectfully dissent from the approval of its application to the particular circumstances of this case.

This court has previously held that the United States Attorney is not rendered an incompetent witness merely because of his important office. *United States v. Cerone*, 452 F.2d 274, 288 (7th Cir. 1971), *cert. denied*, 405 U.S. 964, 92 S.Ct. 1168, 31 L.Ed.2d 240 (1972). In that case the United States Attorney, who was not personally prosecuting the case, was permitted to testify for the purpose of impeaching a defendant's version of a mutual conversation. In the present case it is true that Assistant United States Attorney Hosteny was personally handling the case, but he absented himself from the courtroom while another assistant handled the suppression hearing. The government urges us to separate the suppression hearing from the trial so as to permit Assistant Hosteny, if allowed to testify in the suppression hearing, to thereafter try the case before the jury. I am not prepared to endorse that view which would unnecessarily weaken the general rule. In keeping with the view of the majority I view separateness as a fiction. It would be better to require the prosecutor to decide whether he is witness or advocate and not wear two hats in the same case. That may at times cause the government some temporary but not insurmountable difficulties.

The defendant testified that he called Assistant Hosteny on the telephone to com-

plain that the government had broken its alleged agreement not to prosecute him. He further testified that Assistant Hosteny responded "you are smuggling dope, and I don't like criminals," and "I am putting you in prison." Contrary to defendant's version the government offered to prove, by using Assistant Hosteny as a witness supported by his file memorandum of the telephone conversation, that the defendant did not suggest that any such alleged agreement had been either made or breached. The defendant only mentioned, according to the government's proffer, an alleged DEA offer of the payment of a sum of money for defendant's cooperation against another defendant. By the trial court's ruling the government was not permitted to offer impeaching evidence which might have served to discredit the defendant's other testimony. The government thereby was also prevented from offering affirmative evidence that the alleged agreement was nonexistent by the inference which might be drawn from the absence of any reference by the defendant to that alleged agreement during the relevant telephone conversation. The ruling also served to restrict cross-examination of the defendant.

The careful and experienced trial judge at the conclusion of the suppression hearing informed the parties that he would not consider any of the evidence of the conversation. I do not view that, however, as solving the problem. The trial judge declined to make a credibility determination between an assistant United States attorney and the defendant. That is understandable and usually to be avoided, but in this case it was, in my view, just another of the difficult determinations often facing a trial judge.

It was, after all, the defendant who placed the telephone call to Assistant Hosteny. It was the defendant who voluntarily chose to testify as to the contents of that telephone conversation. The defendant

tion, it had completely disregarded defendant's statements on this subject. Tr. 284. Because we hold that the exclusion of Hosteny's testimony was proper, we need not decide whether this effort to even the scales would have been

sufficient to correct an erroneous exclusion. The district court's gesture is, however, one factor that we consider in concluding that no showing of extraordinary circumstances was made in the instant case.

raised no objection to the government's proposed rebuttal by calling Assistant Hosteny. It was the defendant who chose the means of communication which restricted the only possible government rebuttal witness to the one assistant he telephoned.

In these circumstances, where the defendant attempted to take advantage of a situation that was all his own doing, not the government's, I would permit the government, by the only means at its disposal, to attempt to impeach the defendant and to have the court consider whatever favorable inference might be drawn from the government's version. Perhaps the government would then have been successful in avoiding the suppression of the defendant's oral confession made to DEA agents which in the long run could be the difference between conviction and acquittal.